STATE OF NORTH CAROLINA v. LARRY DARNELL ERBY

No. 8127SC1012

(Filed 16 March 1982)

1. **Criminal Law §§ 33, 87.4; Homicide § 19— self-defense—relevancy of carrying loaded gun—questions on redirect improperly excluded**

     In a prosecution concerning a homicide where the defendant alleged self-defense, the trial court erred in failing to allow defendant, on redirect examination, to explain the circumstances that led him to carry a gun on the night he shot decedent since (1) the prosecution had cross-examined him extensively concerning the fact he carried a loaded gun, and (2) the excluded evidence would have shed light on defendant's self-defense claim.

2. **Criminal Law § 89.6— impeachment—intimate relationship of witness to decedent**

     The trial court erred in a prosecution concerning a homicide when it failed to allow defense counsel to ask a witness if she was in love with decedent as the existence of bias may be shown by the intimate relationship of the witness to the decedent.

3. **Criminal Law § 89.4— inconsistent statement of witness—failure to give limiting instruction**

     The court's failure to give a requested limiting instruction concerning a prior inconsistent statement a witness made to police constituted reversible error.

4. **Criminal Law § 86.6— prior consistent statement of defendant—exclusion reversible error**

     The trial court erred in sustaining objections to testimony of a defense witness who had heard defendant talk to his mother-in-law over the telephone at the police station. The statements were consistent with defendant's trial testimony that he acted in self-defense, and they should have been admitted as corroborating his testimony.

5. **Criminal Law § 102— denial of opportunity to give two hour closing argument—only one address to jury**

     Defendant failed to show a violation of G.S. 84-14 where he argued that the trial judge denied his motion to recess for the day at 4:20 p.m. and begin closing arguments in the morning, as well as his motion for a ten-minute recess to prepare his argument, where the record contained no notation of what time defendant did, in fact, conclude his argument.

APPEAL by defendant from *Davis, Judge.* Judgment entered 19 February 1981 in Superior Court, GASTON County. Heard in the Court of Appeals 2 March 1982.

Defendant appeals from his conviction of voluntary manslaughter and from a sentence of imprisonment for a maximum term of twenty years and a minimum term of eighteen years.

This case involves the shooting death of James Ernest Walls on 27 September 1980. The incident occurred at the Uganda Club in Gaston County and was the result of an argument between the defendant and the deceased. The defendant claimed self-defense.

Numerous witnesses testified at trial, including the defendant and the deceased's girlfriend, Doretha Coles, whose differing versions of the events leading up to the shooting represent the essential conflict in the testimony. Both versions are corroborated by testimony of other witnesses.

Miss Coles testified that the defendant threatened to kill the deceased and the deceased replied, "Kill me." Almost immediately the defendant shot the deceased. The deceased never threatened the defendant, never went into his pocket, and never approached the defendant before he was shot.

Defendant testified that the deceased began walking toward him with his right hand in his pocket, threatening to kill him. The defendant took several steps back, then reached into his pocket for the gun and shot the deceased.

After the shooting, the police found a knife in the deceased's right front pants pocket. The blade was locked in an open position.

*Attorney General Edmisten, by Special Deputy Attorney General T. Buie Costen, for the State.*

*Assistant Appellate Defender James H. Gold for defendant.*

MARTIN (Harry C.), Judge.

[1] Defendant is entitled to a new trial. Of numerous assignments of error raised on appeal, all of which have merit, we will limit our discussion to those evidencing obvious error and prejudice to the defendant.

On direct examination of the defendant, he was asked the following question in an effort to offer an explanation as to why he was carrying a gun on the night of the shooting:

Q. All right, and how did it [the gun] come to be in your right front pocket?

A. The night before, we had some trouble down there. Some guys was shooting—

DISTRICT ATTORNEY: Objection.

COURT: Sustained. Members of the jury, you will not consider the last statement made by the defendant about anything that may have happened the night before.

On cross-examination defendant was asked why he was carrying a gun on that night and he stated, "Because we had some trouble down there where I live." The testimony was allowed. The district attorney, however, chose not to pursue this line of questioning.

Defendant, on redirect examination, again attempted to explain the circumstances that led him to carry the gun:

Q. The district attorney also asked you why you came to have the gun in your pocket on that Friday night, September 27th.

A. Yes.

Q. All right, and you told him because there had been some trouble in front of your house?

A. Yeah.

Q. Well, explain that to the jury.

DISTRICT ATTORNEY: Objection.

COURT: Sustained.

On the state's cross-examination, the prosecutor questioned the defendant extensively concerning the fact that he entered the Uganda Club carrying a loaded gun. The implication was that the defendant was "looking for trouble." (In the words of Judge Davis during a voir dire examination: "A man leaves his house armed

with a gun goes out looking for trouble. . . . He just cold-bloodedly killed a man . . ..")

Contrary to the state's contention that the testimony would be irrelevant, we find the excluded evidence would have shed light on defendant's self-defense claim. The state opened the door to this line of questioning on cross-examination and argued that the self-defense claim was not credible because defendant was carrying a loaded gun. Defendant was entitled to rebut this argument and to fully present his defenses within reasonable limits. *See State v. Spaulding*, 298 N.C. 149, 257 S.E. 2d 391 (1979).

[2] On cross-examination of the state's witness Doretha Coles, Judge Davis sustained the prosecutor's objection when defense counsel asked Miss Coles if she was in love with the decedent. Miss Coles's testimony was damaging to defendant's defense of self-defense and in direct conflict with defendant's version of the events. The purpose of the question was to impeach the witness for bias, a circumstance to be considered in determining the weight given to her testimony. The existence of bias may be shown by the intimate relationship of the witness to the decedent. 1 Stansbury's N.C. Evidence § 45 (Brandis rev. 1973); *State v. Spaulding*, 216 N.C. 538, 5 S.E. 2d 715 (1939). The exclusion of this testimony was error and defendant was prejudiced thereby.

[3] On cross-examination of defense witness Wallace, the prosecutor sought to impeach his testimony by questioning him concerning a prior inconsistent statement he made to police on the night of the shooting. Defense attorney objected and requested a limiting instruction. The objection was overruled and the request denied. The court also failed to so instruct during its charge to the jury.

In North Carolina it is established law that prior inconsistent statements are not admissible as substantive evidence, but may be introduced for the jury's consideration in determining the witness's credibility. 1 Stansbury, *supra*, § 46. Defendant was entitled, upon request, to have the evidence limited to the purpose for which it was competent. *Id.* § 79; *State v. Norkett*, 269 N.C. 679, 153 S.E. 2d 362 (1967). The court's complete failure to give the requested limiting instruction constitutes reversible error.

[4] Judge Davis sustained the state's objections to the testimony of defense witness Patrolman Bess with respect to defendant's

prior consistent statements which were offered to corroborate his trial testimony. Patrolman Bess overheard statements made by the defendant while he was talking to his mother-in-law over the telephone at the police station. These statements included: "He start [sic] raising sand and went in his pocket"; "What am I suppose to do—get cut?"; "He didn't have no business going in his pocket on me." The statements were consistent with defendant's trial testimony that he acted in self-defense—he believed that he was going to be attacked with a weapon when he saw the deceased reach into his pocket. Where the testimony offered to corroborate a witness does so substantially, it is not rendered incompetent because there is some variation. *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572 (1971), *death sentence vacated,* 408 U.S. 939, 33 L.Ed. 2d 761 (1972). The court, after conducting voir dire, concluded that the statements did not materially corroborate defendant's testimony. This was error.

The admissibility of prior consistent statements has been reaffirmed by our courts on numerous occasions. *See* 1 Stansbury, *supra,* § 51. The fact that defendant never testified as to the substance of the telephone call is not a relevant factor. *State v. McLawhorn,* 270 N.C. 622, 155 S.E. 2d 198 (1967). In *Walker v. Baking Co.,* 262 N.C. 534, 138 S.E. 2d 33 (1964), it was held reversible error to exclude the testimony of a highway patrolman as to prior consistent statements of a party witness. Likewise, we so hold.

[5] Finally, defendant assigns as error Judge Davis's denial of his right to present closing arguments to the jury. Defendant contends that he was given less than two hours to argue, in violation of N.C.G.S. 84-14; that he was denied two addresses to the jury, in violation of N.C.G.S. 84-14; that Judge Davis denied his motion to recess for the day at 4:20 p.m. and begin closing arguments in the morning, as well as his motion for a ten-minute recess to prepare his argument.

Both sides rested their cases at approximately 4:15 on the afternoon in question. The record discloses that neither party was prepared to begin closing arguments at this time. The district attorney waived his opening argument, and the record essentially substantiates defendant's contentions. Defendant alleged in his motion to be permitted to make a jury argument the next morn-

ing that he began his argument at 4:45 p.m. and argued until approximately 5:45 p.m., and that throughout his argument there was evidence that the jury was extremely fatigued. Judge Davis found that "both these allegations [were] false and erroneous." The record contains no notation of what time defendant did, in fact, conclude his argument. The only evidence in the record that defendant argued past 5:00 p.m. was Judge Davis's statement that "[w]e would not have [gone past 5:00] had your argument not lasted past that time." Although it seems highly unlikely, considering the late hour of the day, that defendant argued for a full two hours, we are reluctant to find a violation of N.C.G.S. 84-14 in the absence of recorded proof.

Finally, we hold that it appears from the record that the trial court considered irrelevant and improper matters in the sentencing hearing and in imposing sentence. *See State v. Swinney*, 271 N.C. 130, 155 S.E. 2d 545 (1967).

Taken separately as well as cumulatively, these errors require a

New trial.

Judges MARTIN (Robert M.) and WHICHARD concur.