STATE OF NORTH CAROLINA v. DWAYNE EDDIE HOLLINGSWORTH

No. 8512SC653

(Filed 31 December 1985)

**Larceny § 7; Assault and Battery § 14.3; Robbery § 4.7— identity of perpetrator — insufficiency of evidence**

In a prosecution of defendant for robbery, larceny, and assault with a deadly weapon with intent to kill inflicting serious injury, evidence was insufficient to be submitted to the jury where the only evidence tending to identify defendant as the perpetrator consisted of six out-of-court statements allegedly made by defendant's mother, the victim, none of which were admissible as exceptions to the hearsay rule, and defendant's mother testified at trial that she did not remember being hurt, that defendant had her permission to use the allegedly stolen items, and that defendant could have taken the items from her forever if he had wanted to. N.C.G.S. 8C-1, Rules 803(4), 803(5), 803(24), and 804(b)(5).

Judge PHILLIPS dissenting.

APPEAL by defendant from *Johnson (E. Lynn), Judge.* Judgment entered 30 January 1985 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 9 December 1985.

Defendant was charged in a proper bill of indictment with the robbery with a dangerous weapon and the assault with a deadly weapon with intent to kill inflicting serious injury against his mother. He was also charged with felonious larceny of an automobile and felonious larceny of a firearm. Defendant was found guilty of assault with a deadly weapon inflicting serious injury and the robbery and larceny charges. The charges were consolidated for judgment. From a judgment imposing a prison sentence of twenty years, defendant appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Roy A. Giles, Jr., for the State.*

*Assistant Appellate Defender Louis D. Bilionis, for defendant, appellant.*

HEDRICK, Chief Judge.

Defendant assigns as error the trial court's denial of his motion to dismiss for insufficiency of the evidence as to each of the charges. He contends that the only substantive evidence submitted at trial which tends to identify defendant as the perpetrator consists of six out-of-court statements allegedly made by his mother, none of which are admissible as exceptions to the hearsay rule. For the reasons set out below, we agree with defendant and reverse.

At trial, the State called as its first witness defendant's mother, Helen Lyde, who testified that she had taken Valium and was intoxicated on the evening of 26 April 1983. When asked about the head injuries she sustained that night, she testified, "I was drinking [that] evening. I don't remember going to bed. The only thing I remember was the next morning when I called my son, Dwayne Eddie Hollingsworth, to ask him what was wrong with me. And he got me to my chair and tried to take me to the hospital and I wouldn't let him." She explained that she wouldn't let him take her to the hospital because "I really didn't know I was hurt all that bad because I didn't remember getting hurt." She also testified that her son had her permission to use the allegedly stolen items "if he had wanted to" and further, that "if he had wanted to" that he could have taken them from her forever.

The remaining evidence submitted by the State which tended to identify defendant as the assailant consisted of the testimony of the investigating officer, the doctor who treated Ms. Lyde while she was in the hospital, the sheriff of Cumberland County, and two of Ms. Lyde's acquaintances. Each of these witnesses, over defendant's objection, testified about out-of-court statements made by Ms. Lyde concerning the alleged assault and larceny.

After a voir dire examination of Ms. Lyde, two written statements made by her to the investigating officer, Detective Burns, on 2 May and 11 May 1983 were admitted into evidence as exhibits and read to the jury. Although the findings made after the voir dire examination do not clearly establish the basis for overruling defendant's óbjections to the admission of these statements, it appears that the trial court allowed the 11 May statement under Rule 803(24), and, finding that Ms. Lyde had testified

to a lack of memory about the subject matter of the 2 May state-ment, allowed its admission under Rule 804(b)(5) or Rule 803(24).

These residual hearsay exceptions allow the admission of hearsay statements not specifically covered by any of the other enumerated exceptions, if the statements have "equivalent cir-cumstantial guarantees of trustworthiness" and the court deter-mines that

> (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the propo-nent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by the admission of the statement into evidence.

G.S. 8C-1, Rules 804(b)(5) and Rule 803(24). In determining whether the statements have the necessary "guarantees of trust-worthiness," evidence that the declarant later recanted the state-ment is relevant. *State v. Smith*, 315 N.C. 76, 337 S.E. 2d 833 (1985). Additionally, the availability of the witness to testify at trial is a crucial consideration under either hearsay exception, because usually the live testimony of the declarant will be the more probative evidence on the point for which it is offered. *Id.*; *State v. Fearing*, 315 N.C. 167, 337 S.E. 2d 551 (1985).

In the present case, Ms. Lyde recanted at trial both state-ments made to Detective Burns, maintaining that she was intox-icated on 26 April 1983 and had never had any knowledge about how she was injured. In reference to the 2 May statement, which was taken while she was in the hospital, she testified that she was sleepy and on medication when she talked to Detective Burns. She further testified that she was coached by her sister and her two nieces to incriminate the defendant in her 11 May statement. Thus, neither of these statements has the guarantees of trustworthiness required to allow their admission under the residual hearsay exceptions. Additionally, since Ms. Lyde was available to testify and did testify at trial, these hearsay statements are not the most probative evidence on whether a crime was committed or the identity of the perpetrator.

A letter dated 11 July 1983, written by Ms. Lyde to the sheriff of Cumberland County, was also admitted into evidence and read to the jury. The letter identified defendant as the perpetrator of the assault, stated that he had stolen an automobile, a pistol, and other items from Ms. Lyde, and implicated defendant in other crimes. After voir dire testimony, the trial court admitted the letter as a "past recollection recorded" pursuant to Rule 803(5).

Rule 803(5), in pertinent part, provides for the admission of certain evidence as follows:

A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly.

G.S. 8C-1, Rule 803(5). In this case, Ms. Lyde testified that the information contained in the letter was "what my sister told me to write," and "[a]ll this whole letter is a lie. I lied and my sister lied." She further testified that she did not remember and never had remembered anything that happened on the night of 26 April 1983. Since she testified that when she wrote the letter, it did not correctly reflect her knowledge of the events and she did not know facts that she had forgotten by the time of the trial, the trial court should not have admitted the letter into evidence as a recorded recollection.

The trial court also allowed Ms. Lyde's doctor, Dr. Menno Pennink, to read to the jury a notation from the victim's medical record. Dr. Pennink testified that under her medical history, which was typed by his assistant the day after her admission to the hospital, he added the following handwritten note: "[she] [w]as beaten, hit in head with hammer by her son, who was on dope." He further testified that the statement was "probably" made by Ms. Lyde, "probably" when he saw her on a follow-up visit on 8 June 1983.

The only conceivable basis for the admission of this statement is Rule 803(4), which allows the admission of hearsay statements made "for purposes of medical diagnosis or treatment and

describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." G.S. 8C-1, Rule 803(4). The commentary to this rule recognizes that such statements are usually trustworthy because of the patient's motivation to be truthful, but the statements as to fault would not ordinarily qualify under this exception.

In the present case, the evidence establishes that any statement by Ms. Lyde to her doctor identifying her assailant was made six weeks after her initial admission to the hospital for treatment. Thus, any statement made by the victim to the doctor which identified the perpetrator could not have been pertinent to the treatment of her injuries. The statement was not, therefore, admissible pursuant to Rule 803(4).

The trial court also allowed Ms. Lyde's neighbor, Belton Wayne Jones, to testify that she had told him that her son had hurt her and she was afraid of him. This statement was hearsay and was not covered by any of the hearsay exceptions provided by Rule 803 or Rule 804. Thus, the trial court erred in admitting this statement. G.S. 8C-1, Rule 802.

Finally, the trial court permitted Ms. Lyde's friend, Lester Caulder, to testify that she had called him at one o'clock on the afternoon of 27 April 1983. He testified, over defendant's objection, as follows: "Well, I couldn't—I wasn't sure it was her. And I said, 'Is that you, Helen?' And she said, 'Yeah.' Says, 'Would you come over here and carry me to the emergency room?' Because Eddie had hit her on the head with the hammer." When again asked to relate the conversation, he testified, "[s]he just asked me would I come and carry her to the emergency room. That was as much as she said." Thus, Mr. Caulder's testimony establishes that Ms. Lyde requested that he take her to the emergency room, but did not identify her assailant in their telephone conversation. Since the record is devoid of any evidence that he had personal knowledge of the identity of her assailant, he was incompetent to testify on this matter and defendant's objection should have been sustained. G.S. 8C-1, Rule 602.

Each of these out-of-court declarations was inadmissible hearsay evidence. G.S. 8C-1, Rule 802. Although some of these declara-

tions may have been prior inconsistent statements, such statements are not admissible as substantive evidence, but may be introduced only for the jury's consideration in determining the witness's credibility. *State v. Erby*, 56 N.C. App. 358, 289 S.E. 2d 86 (1982). Therefore, the record before us is devoid of any competent substantive evidence tending to show that defendant committed the crimes charged.

Reversed.

Judge JOHNSON concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

Under the rules of evidence now in effect I believe all of Ms. Lyde's out-of-court statements were admissible. For one thing, I interpret Lester Caulder's testimony as being that Ms. Lyde, in getting him to take her to the hospital, told him that defendant had hit her on the head with a hammer. For another, the statement to Dr. Pennink was related to medical treatment, I think, since it corrected the statement in the history which indicated that her head injury was such that she had no memory of the events that preceded it. Pre-injury memory or its lack can be a factor in treating a brain injury, so I understand. And her letter and written statements were properly received, I think, as past recorded recollections.