STATE OF NORTH CAROLINA v. HEMANT RAGHUNATH BORKAR

No. COA04-1159

(Filed 6 September 2005)

**1. Stalking— motion to dismiss—sufficiency of evidence—in victim's presence without legal purpose—intent to cause reasonable fear of harm**

The trial court did not err by denying defendant's motion to dismiss the charge of stalking because, viewing the evidence in the light most favorable to the State, there was sufficient evidence from which the jury could find that defendant followed or was in the presence of the victim on more than one occasion without legal purpose, and with the intent to place her in reasonable fear of her personal safety.

**2. Appeal and Error— preservation of issues—failure to object**

Although defendant contends the trial court erred in a solicitation of murder, stalking, and carrying a concealed weapon case by admitting a witness's pretrial statement in its entirety without redaction, this assignment of error is dismissed, because defendant failed to preserve this issue for appeal when he did not specifically object to the incompetent portions of the prior consistent statement.

**3. Criminal Law— failure to give limiting instruction—prior statement offered for corroborative purposes**

The trial court erred in a solicitation of murder, stalking, and carrying a concealed weapon case by denying a limiting instruction as to a prior statement offered for corroborative purposes and the case is remanded for a new trial, because defendant was entitled, upon request, to have the evidence limited to the purpose for which it was competent.

Appeal by defendant from judgment entered 3 September 2003 by Judge C. Philip Ginn in Swain County Superior Court. Heard in the Court of Appeals 11 May 2005.

*Attorney General Roy A. Cooper, III, by Solicitor General Christopher G. Browning, Jr., for the State.*

*Glover & Petersen, P.A., by James R. Glover and Ann B. Petersen, for defendant-appellant.*

HUNTER, Judge.

Hemant Raghunath Borkar ("defendant") appeals from a judgment dated 3 September 2003 entered consistent with a jury verdict finding him guilty of solicitation of murder, stalking, and carrying a concealed weapon. As we find prejudicial error in the trial court's failure to provide a limiting instruction, we reverse and remand for a new trial.

The evidence tends to show that defendant met Tabitha Zimmerman ("Tabitha") in 1998 when both were first-year students at the University of North Carolina School of Medicine ("Medical School"). Defendant and Tabitha initially had a friendly relationship, often studying together, although Tabitha rebuffed defendant's attempts at a romantic relationship.

In 1999, incidents occurred where defendant expressed anger or irritation at Tabitha for small comments or actions in front of classmates and also expressed anger that Tabitha had not told him she was dating a classmate. Defendant offered Tabitha gifts from a summer trip to India in 1999, some of which she refused to accept. Defendant told Tabitha he could no longer be friends with her at the conclusion of their second year, resulting in a confrontation in which defendant grabbed Tabitha's arm and waved a fist in her face.

STATE v. BORKAR

[173 N.C. App. 162 (2005)]

Relations between defendant and Tabitha remained strained. While assigned to a rotation together in Chapel Hill, defendant confronted Tabitha in a hospital hallway and told her she was a " 'goddamn bitch.' " Tabitha reported defendant's past behavior and name-calling to the Medical School, who met with both parties and arranged for limited contact between them for the remaining two years of the program.

Prior to graduation on 19 May 2002, Tabitha visited her family's home in Bryson City. On 10 May 2002, defendant also visited Bryson City and spent four days hiking. Graduation for the Medical School was held on the weekend of 19 May 2002 and both defendant and Tabitha attended. At one of the social events related to graduation, defendant approached Tabitha and apologized for their difficulties, explaining it had been difficult for him to "get over" his romantic feelings for her. Defendant also mentioned his trip to Bryson City and asked Tabitha to have coffee with him. She declined the offer.

Following graduation, Tabitha returned to Bryson City to prepare for her move to Virginia for her residency program. Tabitha mentioned her concerns regarding defendant to a friend who was married to a local law enforcement officer, David Southards ("Deputy Southards").

On 29 May 2002, defendant returned to Bryson City. Defendant had obtained a map from the Internet to locate the Zimmerman home and asked for permission to park at a nearby church. Defendant testified that he hiked over the next few days in the national park, but after recognizing a moving van from Chapel Hill, hiked into the woods towards the Zimmerman home where the van was parked. Defendant used his binoculars to read the car tags of the vehicles parked at the residence and made notations of the information. Defendant then returned to town and stopped at the local library to check his e-mail. Tabitha entered the library while defendant was there and contacted the police as soon as she saw defendant.

Defendant then left the library, decided to cut short his weekend, and returned to Chapel Hill. As a result of reports by Tabitha and an individual who had seen defendant walk up the road into the woods leading to the Zimmerman home on three consecutive days, a "be on the lookout" order was issued to local law enforcement. The following day, Tabitha moved to Virginia.

On 7 June 2002, defendant returned to Bryson City and again went hiking in the national park. While traveling on a road near the

STATE v. BORKAR

[173 N.C. App. 162 (2005)]

Zimmerman residence, defendant was spotted by Deputy Southards, who pulled defendant over in a parking lot after following him for a short distance. Deputy Southards asked defendant if he had any weapons in the vehicle. When defendant replied that he had weapons under the backseat, Deputy Southards arrested defendant. Defendant was charged with carrying a concealed weapon and stalking, and taken to the Swain County jail.

While in the county jail, defendant shared a cell with Joseph Barron ("Barron"). Barron testified defendant told him that Tabitha had disgraced him in medical school in front of their class and had him reprimanded by the dean, and that he had come to Bryson City to kill her. Defendant told Barron about watching Tabitha and her family from the road and from a church, and about how he had written down their tag numbers. Barron testified defendant offered to pay him $10,000.00 to kill Tabitha, and to pay additional sums for killing other members of her family. Upon release from jail, Barron shared this information with Tabitha's father, David Zimmerman ("Dr. Zimmerman"), who had treated Barron for previous panic attacks by prescribing prescription medication for him. Defendant was subsequently also charged with solicitation of murder.

On 3 September 2003, the jury found defendant guilty of solicitation to commit murder, stalking, and carrying a concealed weapon. The trial court consolidated the charges and sentenced defendant in the aggravated range to a minimum of seventy-three months and a maximum of ninety-seven months.

I.

[1] Defendant contends the trial court erred in denying defendant's motion to dismiss for insufficient evidence as to the charge of stalking. We disagree.

In reviewing challenges to the sufficiency of the evidence, the question for this Court is whether there is substantial evidence of each essential element of the offense charged. *State v. Thompson*, 157 N.C. App. 638, 642, 580 S.E.2d 9, 12 (2003). " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (citation omitted). This Court must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences, and allowing all contradictions and discrepancies in the evidence to be resolved by the jury. *Id.*

The misdemeanor offense of stalking occurs

if the person willfully on more than one occasion follows or is in the presence of, or otherwise harasses, another person without legal purpose and with the intent to . . . :

(1) Place that person in reasonable fear either for the person's safety or the safety of the person's immediate family or close personal associates.

N.C. Gen. Stat. § 14-277.3(a)(1) (2003). Defendant argues the State failed to present sufficient evidence that defendant was in the presence of Tabitha without legal purpose, and with the intent to cause her to be in reasonable fear of harm.

In the case of *State v. Thompson*, the defendant charged with stalking similarly argued that insufficient evidence was presented to show that he was in the victim's presence without legal purpose and had the necessary intent to cause her emotional distress. *Thompson*, 157 N.C. App. at 642-43, 580 S.E.2d at 12. There, the evidence showed that the defendant had frequented the victim's workplace, had been seen going up and down the dead-end road in front of the victim's house, had verbally confronted and threatened the victim, and had made threats that he intended to "blow away" the victim to a third party. *Id.* at 643, 580 S.E.2d at 13. *Thompson* found that such evidence was sufficient to survive a motion to dismiss for the charge of stalking. *Id.* at 643-44, 580 S.E.2d at 13.

Here, the State presented evidence tending to show that during medical school, defendant called Tabitha a " 'goddamn bitch,' " grabbed her, and shook his fist in her face. Tabitha testified that she was rattled and made uncomfortable by these incidents. Special arrangements were made regarding Tabitha and defendant's rotation schedules due to these concerns, and defendant was advised by the Medical School to have no contact with Tabitha. Plainclothes escorts were also provided by the Medical School to protect Tabitha during her graduation ceremony.

Dr. Zimmerman testified that his family was "very alarmed" and had "a good deal of apprehension" about Tabitha's safety. Dr. Zimmerman further testified that just prior to graduation, Tabitha "was convinced that there was a very real threat to her of possible physical harm[.]"

Defendant traveled to Bryson City on three occasions in May and June of 2002, downloaded a map from the Internet in an attempt

to locate the Zimmerman home, watched the Zimmerman home from the woods, and wrote down license plate numbers of each vehicle parked there. Defendant admitted he hid in the woods and watched the Zimmerman home. Multiple witnesses testified to seeing defendant or his Jeep parked a short distance from the Zimmerman home on several different occasions. Defendant was also seen by Tabitha at the Bryson City public library, prompting her to immediately call the Swain County Sheriff's Department and relay concerns about her safety.

On 7 June 2002, only a short distance away from the Zimmerman home, defendant was stopped by Deputy Southards, who searched defendant's vehicle and discovered a riot shotgun, a .357 magnum, a .45 caliber revolver, and hundreds of rounds of ammunition. Defendant was arrested, and while in jail, confessed to Barron that he had been watching Tabitha, that he wanted her, and that he intended to kill her and her family.

Viewing the evidence in the light most favorable to the State, we conclude that there was sufficient evidence from which the jury could find that defendant followed or was in the presence of Tabitha on more than one occasion without legal purpose, and with the intent to place her in reasonable fear of her personal safety. The trial court, therefore, properly denied the motion to dismiss.

II.

Defendant next contends the trial court erred in admitting a witness's pretrial statement in its entirety without redaction, and further contends the trial court erred in denying a request for limiting instructions as to the statement. We agree that the trial court erred in failing to give the requested limiting instruction.

### A. Redaction of Prior Statement

[2] We first address defendant's contention that the trial court's failure to redact portions of Barron's statement was reversible error. As defendant did not identify at trial the specific portions of the statement that were not competent, we find defendant failed to properly preserve this issue for appeal.

"In a noncapital case, where portions of a statement corroborate and other portions are incompetent because they do not corroborate, the defendant must specifically object to the incompetent portions." *State v. Harrison*, 328 N.C. 678, 682, 403 S.E.2d 301, 304 (1991).

Here, the prosecutor sought to corroborate Barron's testimony with a prior consistent statement given to Jenny Hyatt ("Deputy Hyatt"), a deputy sheriff of the Swain County Sheriff's Department. Defendant made only a general objection that the statement was hearsay and did not move to strike or exclude any portion alleged to be incompetent. Although defendant was given an opportunity to conduct a *voir dire* of Deputy Hyatt, the *voir dire* did not focus on whether portions of Barron's statement corroborated his earlier testimony. Defendant later renewed his motion to suppress the statement, but did not object to specific portions of the statement as it was read. Additionally, defendant concedes that portions of Barron's prior consistent statement do corroborate Barron's testimony. Because defendant failed to specifically object to the incompetent portions of Barron's prior consistent statement, we find this issue was not properly preserved for appeal.

### B. Limiting Instruction as to Prior Statement

[3] We next address defendant's contention that the trial court's failure to give the requested limiting instruction was reversible error. We agree.

Before reaching the substantive issue, we address the State's contention that defendant failed to properly request the limiting instruction. Following Deputy Hyatt's reading of Barron's statement and the State's request that the statement be submitted into evidence for corroborative purposes, defendant's attorney stated: "Your Honor, I would like a limited instruction rule of the Court that it doesn't corroborate."

Although we note that defendant's statement was awkwardly worded, it was nonetheless sufficiently clear that defendant's request was for a limited instruction regarding corroboration by prior statement. The limiting instruction for corroboration by prior statement, as set out in 1 N.C.P.I.—Crim. 105.20 (1986), states in pertinent part:

> When evidence has been received tending to show that at an earlier time a witness made a statement which may be consistent . . . with his testimony at this trial, you must not consider such earlier statement as evidence of the truth of what was said at that earlier time because it was not made under oath at this trial. *If you believe that such earlier statement was made, and that it is consistent . . . with the testimony of the witness* at this trial, then you may consider this, together with all other facts and

circumstances bearing upon the witness's truthfulness, in deciding whether you will believe or disbelieve his testimony at this trial.

*Id.* (emphasis added). Thus, as the language of the requested instruction itself directs the jury to make a finding as to whether the statement is corroborative when considering a prior statement, we find defendant's request, ruled on by the trial court, to have properly preserved this issue for our review.

"Evidence of prior consistent statements is admissible for the limited purpose of affirming a witness's credibility, and upon proper request a defendant is entitled to both a limiting instruction at the time of its admission and a jury instruction as to its limited purpose." *State v. Ferebee*, 128 N.C. App. 710, 715, 499 S.E.2d 459, 462 (1998). "Furthermore, 'prior consistent statements' are admissible only when they are in fact consistent with the witness's trial testimony." *State v. Stills*, 310 N.C. 410, 415, 312 S.E.2d 443, 447 (1984) (citations omitted). However, "an instruction limiting admissibility of testimony to corroboration is not required unless counsel specifically requests such an instruction." *State v. Smith*, 315 N.C. 76, 82, 337 S.E.2d 833, 838 (1985). "Defendant was entitled, upon request, to have the evidence limited to the purpose for which it was competent." *State v. Erby*, 56 N.C. App. 358, 361, 289 S.E.2d 86, 88 (1982) (holding that the trial court committed reversible error when it denied defendant's request for a limiting instruction and failed to give the requested limiting instruction).

Here, defendant objected to the reading of the prior statement by Deputy Hyatt on the grounds that the statement contained information which was not corroborative. Without examining the statement, the trial court overruled the objection, and allowed Deputy Hyatt to read the entire statement to the jury. After the statement was admitted into evidence, defendant asked the trial judge to give a limiting instruction. The motion for a limiting instruction was denied and no limiting instruction was given to the jury that Barron's prior statement was introduced solely for the purpose of corroborating his trial testimony and not as substantive evidence.

An examination of the record shows that Barron's testimony was the only evidence presented to establish the elements of the charge of conspiracy to commit murder. Further, Barron's testimony, as discussed *supra*, was critical in establishing the charge of stalking. Finally, Barron's testimony as to defendant's intentions to harm

Tabitha and her family provided evidence as to defendant's intent in the charge of carrying concealed weapons. Thus, Barron's credibility was critical in establishing evidence for each of defendant's charges. We also note that during jury deliberations, the jury specifically requested and was permitted to review the entire contents of the prior consistent statement with no limiting instruction as to the competency of the evidence.

Defendant was entitled, upon request, to have evidence concerning Barron's prior consistent statement limited to a purpose for which it was competent, that is, corroboration. *See State v. Norkett*, 269 N.C. 679, 681, 153 S.E.2d 362, 363 (1967) (holding failure to give requested limiting instruction that evidence was competent only as to the defendant's credibility as a witness was prejudicial error requiring new trial); *Erby*, 56 N.C. App. at 361, 289 S.E.2d at 88. We find, therefore, that the trial court's denial of defendant's request for a limiting instruction constitutes reversible error.

As we find prejudicial error in the trial court's denial of a limiting instruction as to a prior statement offered for corroborative purposes, we reverse and remand for a new trial on all charges. We therefore do not reach defendant's final contention regarding errors in sentencing.

New trial.

Judges HUDSON and GEER concur.