STATE OF NORTH CAROLINA v. FLOYD CURTIS WADDELL

No. 418A98

(Filed 7 April 2000)

**1. Evidence— hearsay—medical diagnosis or treatment exception—child sexual abuse victim—statements inadmissible—admission not plain error**

Statements made by an alleged child victim of sexual offenses, indecent liberties, and felonious child abuse to a licensed psychological associate were not admissible under the medical diagnosis or treatment exception to the hearsay rule where the interview took place after the initial medical examination, in a child-friendly room, in a nonmedical environment, and with a series of leading questions; and the record lacks any evidence that there was a medical treatment motivation on the part of the child declarant or that the psychological associate or anyone else explained to the child the medical purpose of the interview or the importance of truthful answers. However, defendant failed to object to the admission of these statements at trial, and the admission of the statements did not constitute plain error where defendant's convictions of one count of first-degree sexual offense, taking indecent liberties with a minor, felony child abuse and lewd and lascivious acts were supported by (1) the testimony of the child's mother, a pediatrician, a social

services worker, a psychological associate, and a detective, and (2) defendant's pretrial admissions to the detective and his admissions at trial.

## 2. Witnesses— child sexual abuse victim—incompetency to testify—court's refusal to instruct

In a prosecution for first-degree statutory sex offense, taking indecent liberties, felony child abuse and lewd and lascivious acts wherein the child victim was ruled incompetent to testify after he had been called to the stand and a voir dire was conducted, the trial court did not abuse its discretion in refusing to instruct the jury that the child was no longer on the stand because he had been found incompetent to testify since (1) the trial court's finding that the child was incompetent to testify as a witness did not render unreliable the child's out-of-court statements to other witnesses, and (2) defendant could not have been prejudiced because the credibility of the child's version of the events was not in question and was, for the most part, consistent with defendant's own testimony.

Justice FREEMAN did not participate in the consideration or decision of this case.

On appeal of right to review a substantial constitutional question pursuant to N.C.G.S. § 7A-30(1) and pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 130 N.C. App. 488, 504 S.E.2d 84 (1998), finding no error in judgments entered by Everett, J., on 25 August 1995 in Superior Court, Wayne County. Heard in the Supreme Court 11 May 1999.

*Michael F. Easley, Attorney General, by Anita LeVeaux-Quigless, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Mark D. Montgomery, Assistant Appellate Defender, for defendant-appellant.*

LAKE, Justice.

On 6 February 1995, defendant was indicted for two counts of first-degree statutory sex offense, three counts of taking indecent liberties with a minor, three counts of lewd and lascivious acts, and two counts of felony child abuse. The cases were joined for trial and came to trial before a jury at the 21 August 1995 Criminal Session of

Superior Court, Wayne County. The jury found defendant not guilty of one count of first-degree sex offense and convicted him of all other offenses enumerated above. Defendant was sentenced to life imprisonment for the first-degree sex offense, three consecutive ten-year terms for taking indecent liberties with a minor and committing a lewd and lascivious act, and two consecutive ten-year terms for felony child abuse. From these judgments and convictions, defendant gave timely notice of appeal, and the Court of Appeals, with one judge dissenting, affirmed the trial court. Defendant appealed to this Court based on the dissent below and the assertion that another issue determined by the Court of Appeals raised a substantial constitutional question.

The State's evidence tended to show that subsequent to defendant's divorce from Connie Waddell, she was awarded custody of their son, with defendant accorded supervised visitation one day a weekend from 1:00 to 5:00 p.m., commencing in March 1993. On 27 August 1994, visitation was increased to supervised visitation one day a weekend from 9:00 a.m. to 9:00 p.m. Apparently, defendant did not understand that his visitation was to be supervised by the child's paternal grandmother, and the majority of defendant's visitation with his son was unsupervised.

According to Ms. Waddell, the child developed behavioral problems after beginning extended visitation with his father, including bed-wetting, masturbation and aggressive behavior when he became angry, such as hitting and name-calling. Ms. Waddell related that she had not seen the child masturbate previous to his visitation with his father and that the child told her "his daddy done [like] that."

After a 4 September 1994 visit with defendant, Ms. Waddell stated the child, then six years old, "started touching his privates, masturbating and saying my daddy, my daddy, my daddy," and that "his daddy let him touch his privates." After visitation on 10 September 1994, the child told Ms. Waddell he and his father had washed the car together in the nude and that "his father had him to masturbate him and he [the child] saw it shoot off." Thereafter, Ms. Waddell notified Kim Sekulich of the Johnston County Department of Social Services (DSS), who told Ms. Waddell to take the child to Wake Medical Center, where he received a physical exam and met with a psychiatrist.

On 15 September 1994, the child was interviewed by Sekulich at his school. According to Sekulich, the child told her about washing

the car in the nude with his father, described seeing his father mas-
turbate and said his father "shot it off in the air." The child used
the word "peanut" to describe his genitalia and reported he and his
father touched each other's peanuts. Sekulich subsequently filed a
petition alleging defendant's abuse and neglect of the child.
Defendant was thereafter interviewed and arrested by police on 23
September 1994.

On 4 August 1995 and 17 August 1995, the State gave notice to
defendant and the trial court that if the child victim was deemed
unavailable, the statements and testimony of Ms. Lauren Rockwell-
Flick, a licensed psychological associate at Wake Medical Center; Dr.
Elizabeth Witman, who performed a physical examination of the
child; Ms. Sekulich; Detective Mike Smith; and the child's mother
would be introduced at trial. As expected, the child was found incom-
petent to testify at trial, and the aforementioned individuals testified
regarding statements made to them by the child.

At trial, the State presented Rockwell-Flick as an expert in the
field of child sexual abuse. She testified, *inter alia*, that she inter-
viewed the child on 21 September 1994, using anatomically correct
dolls. The child again described washing his father's automobile
while wearing no clothes, identified his genitals as a "peanut,"
described seeing his father masturbate to the point of ejaculation,
and said his father had touched the child's genitals. When asked by
Rockwell-Flick to demonstrate what his father did, the child said, "he
takes his pants off . . . and his shirt," and then the child "took the
peanut off the adult male doll and put it in the mouth of the boy doll."
When Rockwell-Flick asked, "does his peanut touch your mouth?"
the child responded affirmatively. Rockwell-Flick inquired whether
his father had ever done anything to the child's rectal area, and the
child took both the boy and adult dolls and began touching the adult
doll's penis to the rectum of the boy doll. During a second interview
by Rockwell-Flick, on 27 September 1994, the child repeated demon-
strations of oral and anal sex with the adult male and the boy anatom-
ical dolls and indicated the child's penis had been in his father's
mouth. Both interviews between Rockwell-Flick and the child were
videotaped. However, only the tape from the 21 September 1994
interview was admitted into evidence, over defendant's objection,
and shown to the jury.

[1] On appeal, defendant first argues the trial court erred by over-
ruling defendant's objection to the admission of the hearsay testi-

mony of witness Rockwell-Flick, which the Court of Appeals held was admissible under the firmly rooted hearsay exception of "Statements for Purposes of Medical Diagnosis or Treatment," N.C.G.S. § 8C-1, Rule 803(4) (1999). After a thorough review of the record, we find that, contrary to defendant's contentions, defendant did not object to the admission of Rockwell-Flick's testimony at trial as required to preserve the question for appellate review. N.C. R. App. P. 10(b). At an early stage in Rockwell-Flick's testimony, defendant did object to testimony regarding the child's responses to questions about the body parts of the anatomically correct male dolls. Defendant also objected to the State's instruction to Rockwell-Flick to explain how she had conducted the interview with the child. However, after these preliminary objections, Rockwell-Flick entered into extended testimony, running over fourteen pages of the transcript, which was a continuous detailed narrative, without question from the State and without objection from defendant. It was after this testimony that defendant objected to the jury's being shown the video of Rockwell-Flick's interview of the child. In response to that objection, the trial court pointed out that defendant had not objected to testimony which had already been given regarding the content of the interview between Rockwell-Flick and the child. Defendant acknowledged through counsel that there had not been an objection, and defendant then specifically stated he thought Rockwell-Flick could testify as to her examination of the child.

Based on the above, defendant clearly not only did not object to the Rockwell-Flick testimony, but also did not think the testimony was objectionable at the time. Although defendant did object to the presentation of the videotape, Rockwell-Flick had already given detailed testimony regarding the content of the video before the objection was made. Notwithstanding defendant's lack of objection, and thus failure to preserve this issue for appellate review, we will review the Sixth Amendment confrontation question addressed by the opinion of the Court of Appeals for plain error.

This Court has recently examined the admissibility of testimony from the very same witness, Rockwell-Flick, under very similar circumstances in *State v. Hinnant*, 351 N.C. 277, 523 S.E.2d 663 (2000). In *Hinnant*, this Court held that hearsay evidence is admissible under Rule 803(4) only when two inquires are satisfied. *Id.* at 289, 523 S.E.2d at 670. "First, the trial court must determine that the declarant intended to make the statements at issue in order to obtain medical diagnosis or treatment. . . . Second, the trial court must determine

that the declarant's statements were reasonably pertinent to medical diagnosis or treatment." *Id.* at 289, 523 S.E.2d at 670-71. In *Hinnant*, the child victim was interviewed by Rockwell-Flick two weeks after the initial medical examination, in a "child-friendly" room, in a non-medical environment, and with a series of leading questions, whereby Rockwell-Flick systematically pointed to the anatomically correct dolls and asked whether anyone had performed various acts with the child. The record did not disclose that Rockwell-Flick or anyone else explained to the child the medical purpose of the interview or the importance of truthful answers. This Court concluded that there was no evidence the child had a treatment motive when speaking to Rockwell-Flick and that the record did not disclose that Rockwell-Flick or anyone else explained to the child the medical purpose of the interview or the importance of truthful answers. *Id.* at 289-90, 523 S.E.2d at 671. Based on this lack of evidence, this Court held the two-prong test required for the admissibility of hearsay evidence under Rule 803(4) had not been satisfied, and the Rockwell-Flick testimony was therefore not admissible under that rule. *Id.*

The circumstances surrounding the interview of the child victim in the case *sub judice* are essentially identical to those in *Hinnant*. The interview took place after the initial medical examination, in a "child-friendly" room, in a nonmedical environment, and with a series of leading questions. The record also lacks any evidence that there was a medical treatment motivation on the part of the child declarant or that Rockwell-Flick or anyone else explained to the child the medical purpose of the interview or the importance of truthful answers. Therefore, for the reasons stated in *Hinnant*, we conclude the Court of Appeals erred in determining that Rockwell-Flick's testimony was properly admitted under Rule 803(4).

In *Hinnant*, this Court also noted that Rockwell-Flick's testimony might have been admissible under the residual exceptions to the hearsay rule provided there was proper notice, equivalent circumstantial guarantees of trustworthiness and findings of fact and conclusions of law made by the trial court. *Id.; see also* N.C.G.S. § 8C-1, Rules 803(24), 804(b)(5) (1999). In reviewing the record in the instant case, we note several references made by the State to the residual hearsay exceptions. In fact, the State pointed out to the trial court that the State recognized it had the burden to file notice of its intention to use residual hearsay and had ensured that timely notice · was filed. However, the record also shows the State vacillated between relying on the residual and the medical exceptions to

hearsay, and at a pivotal point during *in limine* discussions regarding the admissibility of Rockwell-Flick's testimony, the State determined its position in tender of this evidence in stating, "[T]he testimony of [Rockwell-Flick] comes in under the medical diagnosis." This statement, along with the fact that the trial court then did not make any findings of fact and conclusions of law supporting admissibility as residual hearsay, also precludes a finding of admissibility under the residual exception to hearsay. *See State v. Deanes*, 323 N.C. 508, 515, 374 S.E.2d 249, 254-55 (1988), *cert. denied*, 490 U.S. 1101, 104 L. Ed. 2d 1009 (1989).

Notwithstanding the erroneous admission of the Rockwell-Flick testimony in the case *sub judice*, as in *Hinnant*, we note that an erroneous admission of hearsay " 'is not always so prejudicial as to require a new trial.' " *Hinnant*, 351 N.C. at 291, 523 S.E.2d at 672 (quoting *State v. Ramey*, 318 N.C. 457, 470, 349 S.E.2d 566, 574 (1986)). In reviewing the prejudicial impact of Rockwell-Flick's testimony in the present case, because defendant not only did not object to the admission of the testimony at trial, but also stated he thought the testimony as to the examination of the child was admissible, the issue is reviewed for "plain error." *See State v. Murillo*, 349 N.C. 573, 589, 509 S.E.2d 752, 762 (1998), *cert. denied*, —— U.S. ——, 145 L. Ed. 2d 87 (1999); *State v. Bowman*, 349 N.C. 459, 477, 509 S.E.2d 428, 439 (1998), *cert. denied*, —— U.S. ——, 144 L. Ed. 2d 802 (1999). Before an error by the trial court amounts to "plain error," we must be convinced that absent the error the jury probably would have reached a different verdict. *See State v. Keel*, 337 N.C. 469, 485, 447 S.E.2d 748, 757 (1994), *cert. denied*, 513 U.S. 1198, 131 L. Ed. 2d 147 (1995). Therefore, the test for "plain error" places a much heavier burden upon the defendant than that imposed upon those defendants who have preserved their rights on appeal by timely objection. *Id.*

To determine whether the jury probably would have reached a different verdict had Rockwell-Flick's testimony not been considered, we review the other evidence before the jury. The record shows Ms. Waddell testified without objection that her son told her he washed the car naked with defendant and that defendant masturbated in front of the child to the point of ejaculation. On cross-examination, the mother also stated her son said defendant had the child put his mouth on defendant's "peanut."

Counsel stipulated Dr. Witman as an expert in the field of pediatrics and child sex abuse. She testified, without objection, that she

conducted a physical examination of the child on or about 21 September 1994 and that in her opinion the child "probably had been sexually abused."

Ms. Sekulich testified, without objection, that the child told her defendant masturbated in front of him and "shot it off"; that defendant had touched the child's peanut; that the child touched defendant's peanut; and that defendant made a voluntary statement at the juvenile hearing that he had been on the couch watching TV, had fallen asleep, and had awakened to find the child's mouth on his "stuff."

Detective Smith testified that defendant voluntarily came to the Wayne County Sheriff's Office, was given his *Miranda* rights and made an oral statement. Defendant's statement was reduced to writing; was reviewed sentence by sentence, word by word with defendant; and was signed by defendant. The trial court found the statement was freely, voluntarily and understandingly made after defendant was adequately advised of his constitutional rights, and the statement was read into evidence for the jury's consideration. In the statement, defendant admits to sexually molesting his son since 1992; to taking problems that he had with his ex-wife out on his son; to masturbating in front of his son; to having his son put lotion on defendant's penis and masturbate him; and that on two separate occasions, once while washing the car and once while in the bathroom together, the child had taken his father's penis in his hand and put it in the child's mouth. Defendant admitted in his statement that he knew the things he was doing to his son were wrong and that he was in need of help.

Detective Smith also testified at trial, without objection, that he had presented the child victim with anatomically correct dolls and asked if the child would like to name the dolls. The child named the boy doll after himself and the adult male doll "Daddy." Detective Smith asked the child what he did when he and his daddy were alone, and the child said that he would have to take the dolls' clothes off first to show him. The child removed the dolls' clothes and demonstrated the child doll putting his mouth on the adult doll's penis. He also demonstrated the adult doll putting his penis on the child doll's buttocks. The child told the detective he had put his mouth on his daddy's peanut, that he put lotion on his daddy's peanut and that his daddy put lotion on the child's peanut. The child also related that "after putting lotion on his daddy's peanut, stuff came out of the peanut into the air."

**STATE v. WADDELL**

[351 N.C. 413 (2000)]

At trial, defendant testified on direct examination that he had his son put lotion on his penis and that his son had put defendant's penis in his mouth once when they were washing the car and once when defendant fell asleep watching TV. When asked about the automobile washing incident, defendant responded that he was wearing swim trunks and that his son ran up to him, grabbed defendant's penis and put it in his mouth. When asked about the incident on the couch, defendant stated he had fallen asleep on the couch and awoke to find his penis in the child's mouth. Defendant also testified on cross-examination that the child put his mouth on defendant's penis once while in defendant's bathroom. Defendant testified that he did not know why the child had done this and that the child had done it for only a few seconds before defendant told him to stop.

At trial, defendant also acknowledged three prior convictions for indecent exposure and one conviction for felony child abuse arising from the death of defendant's child from a previous marriage. On direct examination, defendant initially stated the child died from a head injury received in a car accident which occurred two weeks prior to the child's death. On cross-examination, defendant clarified that the child died from a head fracture that medical reports indicated happened on the day of the child's death.

The aforementioned testimony from Ms. Waddell, Dr. Witman, Ms. Sekulich, Detective Smith and the defendant himself has not been challenged on appeal to this Court. Therefore, applying the "plain error" standard and considering the abundance of evidence properly presented at trial, particularly defendant's own extensive and detailed admissions, we cannot conclude that because of the trial court's error in admitting Rockwell-Flick's testimony the scales were tilted to the extent that a different result was reached by the jury than would have been reached otherwise. To the contrary, we conclude a different result probably would not have been reached by the jury without the Rockwell-Flick testimony. We therefore hold that the erroneous admission of the Rockwell-Flick testimony did not constitute plain error, and defendant is not entitled to a new trial as a result of that error.

[2] Defendant next assigns error to the Court of Appeals' holding that the trial court did not err when it denied defendant's request to instruct the jury that the child had been found incompetent to testify. The parties do not dispute the fact that the child was incompetent to testify at trial and was therefore "unavailable." He suffered from a

speech impediment and learning disabilities, became distracted and confused during questioning and did not understand the need to tell the truth at trial.

The sequence of events which led to defendant's request for jury instruction began when the State called the child to testify before the jury. The State opened the examination by asking the child whether he understood the need to tell the truth. Although the child became confused several times during questioning, initially it appeared as though the child could sufficiently express himself and that he understood the need to tell the truth, as required by N.C.G.S. § 8C-1, Rule 601. Defendant then requested a *voir dire* of the witness, and the trial court sent the jury out while the child was still on the stand. During continuing questioning, the child was repeatedly asked if he would promise to tell the truth in court, to which the child began to consistently reply, "No." When the trial court asked, "Don't you know it is good to tell the truth?" the child responded, "No." The trial court eventually concluded the child was unable to "express to the Court his understanding of what it is to tell the truth and what it is to tell a lie," and the child was brought down from the witness stand and removed from the courtroom. Before the jury was brought back into the courtroom, the trial court denied defendant's request for instruction to the jury explaining why the child was no longer on the stand.

Defendant asserts that the boy's words were put before the jury in the hearsay testimony of Rockwell-Flick and other witnesses, and because the jury was never instructed the child was incompetent to testify, the jury was necessarily led to believe his words were worthy of belief. Precedent has established, however, that "the Confrontation Clause does not erect a *per se* rule barring the admission of prior statements of a declarant who is unable to communicate to the jury at the time of trial." *Idaho v. Wright*, 497 U.S. 805, 825, 111 L. Ed. 2d 638, 658 (1990). In the case *sub judice*, the admissibility of the child's prior statements to police, doctors and his mother is determined by their own indicia of reliability. The reliability requirement can be met in either of two ways: "where the hearsay statement 'falls within a firmly rooted hearsay exception,' or where it is supported by 'a showing of particularized guarantees of trustworthiness.' " *Id.* at 816, 111 L. Ed. 2d at 653 (quoting *Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608 (1980)). "[T]he relevant circumstances [in determining trustworthiness] include only those that surround *the making of the statement* . . . ." *Id.* at 819, 111 L. Ed. 2d at 655 (emphasis added). The

determination of whether the child victim is competent to testify, which is determined at the time of trial, is a separate analysis from the determination of whether hearsay statements meet the required standard of reliability or trustworthiness as judged at the time the statement was made. Therefore, we reject defendant's intimation that the trial court's finding that the child was incompetent as a witness renders the child's out-of-court statements unreliable. *See State v. Rogers*, 109 N.C. App. 491, 498, 428 S.E.2d 220, *cert. denied*, 334 N.C. 625, 435 S.E.2d 348 (1993), *cert. denied*, 511 U.S. 1008, 128 L. Ed. 2d 54 (1994).

Additionally, the presiding judge is given large discretionary power as to the conduct of a trial. *State v. Young*, 312 N.C. 669, 678, 325 S.E.2d 181, 187 (1985); *State v. Rhodes*, 290 N.C. 16, 23, 224 S.E.2d 631, 635 (1976). Generally, in the absence of controlling statutory provisions or established rules, all matters relating to the orderly conduct of the trial or which involve the proper administration of justice in the court, are within the trial court's discretion and are reviewed only for abuse of that discretion. *Young*, 312 N.C. at 678, 325 S.E.2d at 187.

In determining whether defendant could possibly have been prejudiced by this ruling of the trial court, we find it relevant and determinative that the credibility of the child's version of events does not appear to have been in question. The child's version is, for the most part, consistent with defendant's own testimony. The primary variance between defendant's own admissions and the accusations against him was how the child's mouth came to be on his father's penis and the extent of any rectal contact which occurred. Assuming *arguendo* the jury unanimously believed defendant's contention that there was no inappropriate rectal contact, there was abundant evidence of fellatio through defendant's own admissions to support his conviction of one count of first-degree sex offense. Based on the lack of conflicting testimony before the jury, we are unpersuaded by defendant's claim that he was prejudiced by the lack of instruction regarding the child's competency to testify at trial. Therefore, based on the discretionary nature of the trial court's ruling and the lack of possible prejudice resulting from that ruling, we conclude there was no abuse of discretion or resulting error.

In summary, based on our holding in *Hinnant*, we hold the Rockwell-Flick testimony was inadmissible under the medical exception to hearsay. However, based on "plain error" analysis of that

issue, we conclude defendant received a fair trial, free from prejudicial error, and we therefore modify and affirm the decision of the Court of Appeals.

MODIFIED AND AFFIRMED.

Justice FREEMAN did not participate in the consideration or decision of this case.