IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-851

Filed 05 July 2023

Wayne County, No. 20 CRS 51147

STATE OF NORTH CAROLINA

v.

CALVIN RAY HOCUTT, Defendant.

Appeal by Defendant from judgment entered 17 February 2022 by Judge William W. Bland in Wayne County Superior Court. Heard in the Court of Appeals 25 April 2023.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Brenda Menard, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Amanda S. Zimmer, for Defendant-Appellant.*

RIGGS, Judge.

Defendant Calvin Ray Hocutt appeals from a judgment entered after a jury found him guilty of felony cruelty to an animal. Mr. Hocutt contends, among other arguments, that the trial court committed plain error in admitting written hearsay as substantive evidence when: (1) the eyewitness who gave the written statement testified at trial that he was unable to remember the most incriminating portions of that statement; (2) that same witness testified he was drunk, legally blind, and suffered from short-term memory issues at the time the statement was made; and (3)

the admission of the statement as substantive evidence and subsequent publication to the jury was contrary to the North Carolina Rules of Evidence and so prejudicial as to warrant a new trial. The State disagrees, countering that the written statement was admissible under the hearsay exception found in Rule 803(5), which allows for the admission of recorded hearsay "concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately . . . ." N.C. R. Evid. 803(5) (2021). Because we hold that the State failed to establish the necessary foundation to admit the disputed hearsay evidence under Rule 803(5), and because said hearsay was the only evidence introduced tending to show Mr. Hocutt as the perpetrator of the crime, we agree with Defendant that the trial court plainly erred and order a new trial.

## I. **FACTUAL AND PROCEDURAL HISTORY**

On 21 March 2022, Michael Lozier and his father, Thomas "Tommy" Lozier, each lived in adjacent single-wide motorhomes that they rented from their neighbor, Jean "Rambo" Gelin, in Dudley, North Carolina. Michael was in his room that afternoon when he received a phone call from his stepmother asking him to come outside because she had heard a gunshot in the neighborhood. He met his father, who was drunk, in their shared driveway; the two did not think much of the event, as gunshots were common in the neighborhood.

Rambo returned home that evening after dark. One of his dogs, Campbell, was not in his usual place by Rambo's backdoor and, on the following morning, Rambo

received a text message from Tommy's wife that Campbell had been shot the day before. Rambo met with Tommy and Michael in Rambo's front yard, and Tommy told Rambo that Mr. Hocutt had shot Campbell. Rambo called the Wayne County Sheriff's Department at Tommy's urging, and Deputy Brandon Elrod responded to the shooting.

When Deputy Elrod arrived, he met Michael, Tommy, and Rambo inside Rambo's fenced front yard. Campbell's body was also in the front yard, and Deputy Elrod observed a small entry wound in the dog's chest. A search of the area for other evidence, such as shell casings, proved unsuccessful. Tommy did offer to give a statement; however, that statement was dictated to his son because Tommy could not read or write. Michael transcribed the following statement, as signed by Tommy:

> Yesterday about 5:00 pm I was in the nabors [sic] yard an [sic] I herd [sic] a gun shot at Rambo's house (121/Brookterrace) an [sic] seen [Mr. Hocutt] runing [sic] away from Rambo's front gate with a rifle (22) back to his house[.] [Mr. Hocutt] then told me he shot the dog in the chest an [sic] killed him[.] I herd [sic] a real loud wine [sic] an [sic] then it stoped [sic] all together [sic].

At the time Tommy signed the document, no one read it back to him to confirm its accuracy. The document also did not disclose that Tommy was both legally blind and drunk at the time he saw Mr. Hocutt running from Rambo's house.

Detective Milburn Powers interviewed Rambo, Tommy, and Michael later that week. Detective Powers also obtained and executed a search warrant for Mr. Hocutt's home in an attempt to locate a small-caliber rifle, but no evidence was obtained as a

result.  Detective Powers subsequently learned that Mr. Hocutt did own such a rifle, but that it had been reported stolen on 4 April 2020.

Mr. Hocutt was indicted for felony cruelty to animals on 1 March 2021.  Trial began on 15 February 2022 and, after jury selection, the trial court held a *voir dire* hearing regarding Tommy's recorded out-of-court statement.  Michael testified first, telling the trial court that he transcribed his father's statement because his father could not read or write.  He further testified that, while the trial court was on break after jury selection, he had spoken with Tommy, Mr. Hocutt, and Mr. Hocutt's father, Joshua Smith,[1] about Tommy's anticipated testimony.  In that conversation:

> [Tommy] was saying to [Mr. Smith], . . . it weren't fair, you know . . . .
>
> . . . .
>
> [T]hat Rambo was kind of like, ah—you know, pushing him towards, you know . . . making it that, you know, the event . . . , whatever, you know, the statement that he wrote right there, he said he felt that he, you know, he was kind of pushed into making that statement by the deputy and Rambo and whoever, you know[.]

Michael then confirmed for the trial court that he was going to testify truthfully and without pressure from anyone else.

Tommy's *voir dire* testimony followed, during which he stated that his written statement was "pretty much [accurate] or close to it."  He acknowledged that he

---

[1] Mr. Smith was also Tommy's co-worker.

signed it; when asked if his son wrote down what he had said, Tommy testified "I guess. I guess he did because he's sitting in the front seat and I'm in the back seat." He also testified that he was drunk when he saw Mr. Hocutt the day before, drunk at the time he gave the statement, and that he and Mr. Smith wanted to bring that to the prosecutor's attention. On cross-examination, Tommy testified that the written statement was never read back to him because "I had trust in my son that he was . . . filling it out as he was listening to it, I guess." Like Michael, he assured the trial court that he would testify truthfully, to the best of his recollection, and without influence.

Once the jury returned to the courtroom, the State called Michael as its first witness. Michael testified consistent with the above recitation of the facts, and Tommy's written statement was admitted into evidence without objection during this testimony. He further testified that Tommy was drunk on a daily basis, including on the dates in question, due to several tragic deaths in the family.

Tommy testified next. When asked if he saw Mr. Hocutt carrying anything on the day of the shooting, Tommy testified:

> And I'm, I'm not really sure that I remember, because I were drinking that day, I was drinking that day, but I, I was saying that—and I have short-term memory, and it's hard for me to remember my, my own birthday, and, um . . . as long as it's been since this happened . . . .

On follow-up questioning, he further testified:

> I heard a gunshot and I'd seen Calvin coming back from where his dog . . . [,] [m]e and [Mr. Smith[2]] was out there talking and when [Mr. Hocutt] come back, I mean . . . I can't—it's hard for me to remember, I know, I know he come across, back across the road, he told [Mr. Smith] too the dog was dead or something, I don't know, I, I heard a gunshot, the dog is dead, and so I put two and two together.
>
> [THE STATE]: Did you see [Mr. Hocutt] with a gun?
>
> [TOMMY]: I seen him with something in his hand, I'm not going to say it was a gun, because I was impaired and, and, and—I still can't remember.

When presented with his written statement by the State, Tommy testified that he could not read or write and was legally blind, though he did confirm that he and his son had signed the statement. The prosecutor read the statement aloud for the jury and asked if that was "the statement as you recall on March 22?" Tommy replied as follows:

> I'm, I'm—I may have, yeah, I may have.
>
> . . . .
>
> I may have, I, I ain't going to be as for sure about it because I'm not going to jeopardize myself when I can't remember, you know, I don't know.
>
> [THE STATE]: Today you do not remember what you saw on March 22.
>
> [TOMMY]: Like I said, I seen him coming back, I don't—I couldn't have told you if it could have been a stick or it

---

[2] Tommy would later contradict this detail, stating he was by himself in his yard when he heard the gunshot.

> could have been a—now I couldn't tell you, but then that's what it looked like.
>
> [THE STATE]: And that's the statement [Mr. Hocutt] made to you then?
>
> . . . .
>
> [TOMMY]: I can't say about that now; I can't remember that.

The State then published the written statement to the jury without objection.

On cross-examination, Tommy confirmed to the jury that he was unable to read the statement and that he did not remember whether it had ever been read back to him. He also testified that he had memory issues, was legally blind, and was drunk at the time of the shooting. As for whether Mr. Hocutt had fired weapons in the neighborhood in the past, Tommy testified on redirect that law enforcement "had been over there two or three times about them—they practice—target practice behind the house." Finally, on re-cross, Tommy gave the following testimony concerning what he witnessed Mr. Hocutt carrying:

> I didn't know what it was, I know—I know that they run the dog away from there, they run the dog away and the dog come back, this is what—that I saw, and then he kept over there and [Mr. Hocutt] went running and I don't know, I'm not going to say if he had a gun, if he had a stick, because [Mr. Smith] was the one that had a stick, he went over there and killed—killed his dog—because then I'd be mad too, and I don't, I don't . . . I don't know what to say.
>
> . . . .

> I can't say it weren't a gun, I can't—I don't know what it was. I don't want to say that it was a stick and it was a gun or if it was a gun it was a stick. Do you understand?

After the Loziers testified, Deputy Elrod, Detective Powers, and Rambo all took the stand. Deputy Elrod detailed his receipt of Tommy's statement and immediate search of Rambo's yard; Detective Powers recounted his interview with Tommy and search of Mr. Hocutt's home; and Rambo testified to his lack of prior interactions with Mr. Hocutt, his discovery of Campbell's body, and Tommy's statements to him that Mr. Hocutt killed Campbell.

Mr. Hocutt's counsel moved to dismiss the charge against him at the close of the State's evidence and renewed that motion at the close of all evidence. The trial court denied both motions and proceeded to the charge conference. During the conference, Mr. Hocutt's counsel offered no changes to the pattern jury instructions proposed by the trial court. At the conclusion of the charge conference, the trial court stated, without objection, that "I don't think there's any instruction that would relate to [Tommy's written statement], that statement. There's not an admission or a confession, just a statement by a witness. And we talked about witnesses already."

Following instruction and deliberation, the jury returned a guilty verdict. Mr. Hocutt was sentenced to six to 17 months' imprisonment, which was suspended for 18 months' special probation, including a four-month active term. Mr. Hocutt gave oral notice of appeal in open court.

## II.   ANALYSIS

Mr. Hocutt first argues that the admission of Tommy's written statement—and the repetition of that hearsay in testimony from Detective Powers and Rambo—as substantive evidence without a limiting instruction amounted to plain error, asserting the statements do not fall within any applicable hearsay exception in the North Carolina Rules of Evidence.  The State presents the counterargument that Rule 803(5) supplies just such an exception, at least as far as the written hearsay statement is concerned.  After consideration of the Rule, our precedents, and the record in this case, we ultimately agree with Mr. Hocutt: Tommy's written statement was never "shown to have been made *or adopted by the witness when the matter was fresh in his memory*" as required by the Rule's plain language, N.C. R. Evid. 803(5) (emphasis added), and that statement—as well as the testimony from Detective Powers and Rambo repeating that hearsay—should not have been admitted as substantive evidence and without a limiting instruction.  And, because Tommy's hearsay statements were the only evidence definitively identifying Mr. Hocutt as the person who shot Campbell, the trial court's error had a probable impact on the jury's guilty verdict.  Finally, as our resolution of this issue requires a new trial, we decline to address the remaining arguments presented in Mr. Hocutt's brief.

## A.  Standard of Review

When evidence is admitted without objection, plain error review of that evidence's admissibility applies on appeal when expressly argued in the defendant's

brief. N.C. R. App. 10(a)(4) (2022); *State v. Betts*, 377 N.C. 519, 523, 858 S.E.2d 601, 604 (2021). Under that standard:

> [A] defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings[.]

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326 (2012) (citations and quotation marks omitted).

## B. Rule 803(5) and Tommy's Statement

As discussed above, Rule 803(5) allows as substantive evidence:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly.

N.C. R. Evid. 803(5). Our Court has summarized this Rule as consisting of three necessary parts:

> (1) The document must pertain to matters about which the declarant once had knowledge; (2) The declarant must now have an insufficient recollection as to such matters; (3) The document must be shown to have been made by the declarant or, *if made by one other than the declarant, to have been examined and adopted when the matters were fresh in her memory.*

*State v. Love*, 156 N.C. App. 309, 314, 576 S.E.2d 709, 712 (2003) (cleaned up) (citation omitted) (emphasis added). Under the third prong, "the record need not have been made by the witness herself; it is enough that she able to testify that (1) *she saw it at a time when the facts were fresh in her memory*, and that (2) it actually represented her recollection at the time." *State v. Spinks*, 136 N.C. App. 153, 159, 523 S.E.2d 129, 133 (1999) (cleaned up) (citation and quotation marks omitted) (emphasis added).

In *Spinks*, this Court examined a written out-of-court statement and held that it was inadmissible because it was not adopted by the declarant consistent with the Rule. There, the State's witness could not recall the events at issue and was presented with "a summary of [her] oral statement, as written by a police investigator in the course of his investigation of this case." *Id.* at 158, 523 S.E.2d at 133. However, "[w]hen asked whether she had read the document prior to signing it, [the witness] stated, 'I didn't even read it. I just signed this piece of paper.'" *Id.* She further testified that she could not remember some parts of the statement, leading the State to offer—and the trial court to accept—the written statement as substantive evidence under Rule 803(5) and over the defendant's objection. We ultimately held that this ruling was in error for failure to satisfy the Rule's third requirement:

> Here, the trial court erred in allowing the statement to be read into evidence without a showing that the statement 'was made or adopted by [the witness] when the matter was fresh in [her] memory and to reflect that knowledge correctly.' Subsequent to the admission of the statement, [the witness's] testimony makes it clear that not only does

> she not recall the matters in the statement, she disagrees with some of the statements found therein. It appears from [the witness's] testimony that she did not write the statement herself, and that she did not read it before signing it. . . . Further, by the plain language of Rule 803(5), it was error to admit the written statement as an exhibit.

*Id.* (citation omitted).

The Rule's third prong is likewise unsatisfied here. It is undisputed Tommy did not write the statement attributed to him, as he is illiterate, legally blind, and was drunk on the day it was transcribed. There is likewise no dispute that he did not read the statement before signing it for the same obvious reasons. Finally, there was no testimony that anyone ever read the statement back to him at the time it was transcribed; to the contrary, he alternatingly testified that no one read it back to him or that he could not remember whether anyone did so. And while he did testify at trial that the statement appeared to be accurate, it cannot be said that he was adopting it "when the matter was fresh in his memory," N.C. R. Evid. 803(5), as he repeatedly testified that he could not recall key facts recounted in the written statement and, on one occasion, contradicted them.

Though the State argues that the statement was adequately adopted because Tommy signed the statement, *Spinks* makes clear that his signature on the statement is inadequate to satisfy the third prong of Rule 803(5) when: (1) it was never read back to him for adoption; (2) his in-court testimony contradicted the statements contained therein; and (3) he could not recall the events described. *Spinks*, 136 N.C.

App. at 159, 523 S.E.2d at 133. Finally, the trial court likewise erred in admitting the statement as an exhibit, in contravention of the express provisions of the Rule. *Id.*

Though we hold that Tommy's statement was admitted without adequate foundation under Rule 803(5), nothing herein should be construed to hold that an illiterate witness's recorded recollection may never be admissible. An audio recording of a witness's statement presents a distinctly different set of circumstances than those found here. Alternatively, had the trial court heard testimony that the statement was read aloud to Tommy at the time it was recorded, and had Tommy testified that the statement read to him during *voir dire* matched his recollection of the statement as previously read to him, the trial court could have admitted the statement as substantive evidence under the Rule. And the residual hearsay exception allows the trial court to admit, in its discretion, a hearsay statement "not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness[.]" N.C. R. Evid. 803(24) (2021). *See also State v. Reid*, 380 N.C. 646, 662, 869 S.E.2d 274, 287 (2022) (noting that admission of hearsay under the residual exception is in the trial court's discretion upon consideration of several trustworthiness factors). Finally, hearsay may sometimes be admissible as non-substantive evidence with an appropriate limiting instruction. N.C. R. Evid. 105 (2021). None of the above alternatives appears in this record, however, and we hold

the trial court erred by admitting Tommy's hearsay statement as substantive evidence and without providing a limiting instruction.

## C. Prejudice

Having shown error in the statement's admission as substantive evidence and without a limiting instruction, Mr. Hocutt argues that the mistake was so prejudicial as to amount to plain error because: (1) all the other evidence concerning the shooting was circumstantial; and (2) Tommy's remaining testimony was "only . . . that he could not remember if [Mr. Hocutt] had a gun and that [Mr. Hocutt] said the dog was dead." The State does not argue lack of prejudice, and instead rests on its predicate—and now rejected—argument that any admission of the statement was proper under Rule 803(5). We agree with Mr. Hocutt that the trial court's error was so prejudicial as to amount to plain error necessitating a new trial.

When Tommy's hearsay statements are excised from consideration, we can identify no remaining direct evidence that tends to show or identifies Mr. Hocutt as Campbell's killer. This case is thus distinct from cases in which the admission of hearsay, while erroneous, did not amount to plain error. *Cf. State v. Waddell*, 351 N.C. 413, 423, 527 S.E.2d 644, 651 (2000) (holding error in admitting hearsay testimony was inadequately prejudicial on plain error review of first-degree sex offense conviction because "there was abundant evidence of fellatio through defendant's own admissions to support his conviction").

Absent the admission of Tommy's hearsay statements as substantive evidence and without a limiting instruction,[3] the jury would be left only with Tommy's circumstantial testimony that Mr. Hocutt: (1) was seen near Rambo's property carrying something; and (2) told Tommy and Mr. Smith that Campbell was dead. No other evidence placed Mr. Hocutt at the scene, and no other evidence suggested he was armed or shot Campbell. And Tommy's in-court testimony was itself of questionable veracity, given his other testimony that he was blind, drunk, and suffered from short-term memory loss at the time of the shooting. In light of this thin evidence and the lack of any contrary argument from the State, the admission of Tommy's out-of-court statement had a probable impact on the jury's verdict that Mr. Hocutt shot and killed Campbell intentionally and with malice.

## III.   CONCLUSION

For the foregoing reasons, we hold that the trial court plainly erred in admitting Tommy's hearsay statement as substantive evidence without adequate foundation, and Mr. Hocutt is entitled to a new trial.

NEW TRIAL.

---

[3] As noted above, Tommy's written hearsay statement that Mr. Hocutt killed Campbell was repeated in later testimony by Detective Powers and Rambo. Unlike Mr. Hocutt, the State makes no argument addressing the impact of this testimony on the prejudicial effect of the erroneous admission and publication of Tommy's hearsay statement. Given that this testimony should have been subject to the same limiting instruction and was given *after* the erroneous admission and publication of Tommy's written statement, said testimony increased the probative value of that inadmissible hearsay and appears to reinforce—rather than undercut—the prejudicial nature of the error committed below.

Judges TYSON and COLLINS concur.