STATE OF NORTH CAROLINA v. LARRY LEGGETT

No. COA98-1413

(Filed 5 October 1999)

**1. Evidence— other crimes—murder—robbery with a firearm**

The trial court did not err in a double murder case by allowing testimony of defendant's other crimes of robbery with a firearm pursuant to Rule 404(b) because the evidence was relevant for some purpose other than to show defendant's propensity to commit this type of crime, and the trial court concluded under the Rule 403 balancing test that the evidence was more probative than prejudicial.

**2. Evidence— past recollection recorded—properly authenticated—statement within reasonable time—accurate when given**

The trial court did not err in a double murder case when it allowed the past recorded recollection of a State's witness, defendant's cellmate, to be read to the jury because it was properly authenticated under N.C.G.S. § 8C-1, Rule 803(5) since the witness gave the statements within a reasonable time of having heard them and testified that they were accurate when given.

**3. Constitutional Law— right to confront and cross-examine witnesses—past recollection recorded—firmly rooted hearsay exception**

The trial court did not violate defendant's constitutional right to confront and cross-examine witnesses against him in a double murder case when it allowed the past recorded recollection of a State's witness, defendant's cellmate, to be read to the jury because the recorded recollection exception codified in Rule 803(5) is a firmly rooted hearsay exception in North Carolina.

STATE v. LEGGETT

[135 N.C. App. 168 (1999)]

**4. Constitutional Law— due process—alternative but not mutually inconsistent theories—credibility**

The trial court did not violate defendant's due process rights in a double murder case when it allowed the State to argue alternative but not mutually inconsistent theories at different trials because only the co-participants know who actually fired the fatal shots at each victim and the State is allowed to argue the credibility of the witnesses to the different juries.

**5. Criminal Law— instructions—harmless error—prompt and complete correction**

The trial court's initial jury instructions in a double murder case concerning the consideration of the testimony of a co-participant who had been convicted in a separate trial were rendered harmless by the trial court's prompt and complete correction of the erroneous instruction.

Appeal by defendant from judgment entered 10 April 1996 by Judge Herbert Small in Wayne County Superior Court. Heard in the Court of Appeals 19 August 1999.

*Michael F. Easley, Attorney General, by Francis W. Crawley, Special Deputy Attorney General, for the State.*

*Nora Henry Hargrove for defendant-appellant.*

EDMUNDS, Judge.

This appeal arises from a double murder. On the evening of 20 January 1994, Margaret Strickland borrowed her mother's car to visit Bobby Stroud. Two days later, the bodies of Strickland and Stroud were found near Dudley, North Carolina. Autopsies disclosed that Strickland had suffered blunt force injury to her left cheek and forehead as well as three gunshot wounds, one to the chest and two to her head and face. Stroud also suffered from three gunshot wounds, one to the back and two to his head and neck. The car owned by Strickland's mother was found behind an abandoned house. Inside the trunk, police discovered Strickland's fingerprints and palm print. In the back seat, police found a cassette cover containing the fingerprint of Kwame Teague. Markers from human blood found on the back seat matched markers found in Strickland's blood.

Three individuals were indicted for the murders and were tried separately. Defendant, the last of the three, was tried for first-degree

murder and related charges at the 11 March 1996 criminal session of the Wayne County Superior Court. The State proceeded under theories of both felony murder and premeditation and deliberation. Defendant was convicted of first-degree kidnapping, robbery with a dangerous weapon, and first-degree murder under the felony murder rule. The trial court imposed a sentence of life.

I.

**[1]** Defendant first argues that it was error for the trial court to allow testimony of other crimes pursuant to Rule 404(b) of the Rules of Evidence because, he contends, there were insufficient similarities between the crimes to allow testimony regarding the past crimes. We disagree.

Rule 404(b) has been held to be a rule of inclusion, unless the only probative value of the evidence of other crimes is to show a propensity to commit an offense of the nature of the crime charged. *See State v. Coffey*, 326 N.C. 268, 389 S.E.2d 48 (1990). The rule states:

(b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (Supp. 1998). When a court determines that evidence is offered pursuant to Rule 404(b), the court first must determine whether that evidence is relevant. *See State v. Morgan*, 315 N.C. 626, 637, 340 S.E.2d 84, 91 (1986). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (1992). Even if relevant, the evidence may be excluded if the danger of prejudice substantially outweighs its probative value. *See* N.C. Gen. Stat. § 8C-1, Rule 403 (1992). Exclusion or admission of evidence under Rule 403 is left to the sound discretion of the trial court. *See State v. Parker*, 113 N.C. App. 216, 225, 438 S.E.2d 745, 751 (1994). "When the incidents are offered for a proper purpose, the ultimate test of admissibility is 'whether the incidents are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of N.C.G.S. § 8C-1, Rule 403.' " *State v. Pruitt*, 94 N.C. App. 261, 266,

380 S.E.2d 383, 385 (1989) (quoting *State v. Boyd*, 321 N.C. 574, 577, 364 S.E.2d 118, 119 (1988) (citation omitted)).

The evidence in question related to two prior incidents. The first occurred in January 1994, when two black men entered the apartment of Mark Spears and Robin Barnes. Spears identified defendant as the intruder who pointed a pistol at his (Spear's) head and with whom he struggled before the intruders fled. Barnes also testified that he was "pretty sure" defendant was the individual wrestling with Spears. The second incident occurred on 29 January 1994, when Robert Flores was robbed at gunpoint by two men. Flores identified defendant as the robber who threatened him with a handgun. After a lengthy *voir dire* hearing on the matter, the trial court concluded:

[T]he evidence . . . is competent . . . to show that there was a plan and a scheme to participate in the armed robbery with the assistance of at least one additional person.

. . . .

. . . [T]he perpetrators of each armed robbery attempted to gain an advantage by the use of surprise or deception over the intended victim. . . .

The perpetrator of the Spears' and Barnes' attempted robbery pointed a gun at the left ear of Spears. The perpetrator of the robbery of Strickland shot her in the head above the left ear.

The perpetrators commenced each crime after [sic] 9 p.m. and approximately midnight of the same day.

The use of the small caliber handgun was used in a similar fashion during the Flores' and Spears' incident in that the gun was first raised before it was lowered or pointed at anyone.

. . . .

. . . The similarities of the crimes committed against Robert Flores, Mark Spears, and Robert Barnes are sufficient to support the reasonable inference that the defendant Larry Leggett participated in each of them.

. . . The evidence of the robbery of Flores and the attempted robbery of Spears and Barnes is admissible for the purpose of showing intent, preparation, plan and identity of the defendant and its probative value is not outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, consid-

erations of undue delay, waste of time or needless presentation of cumulative evidence.

We find no abuse of discretion in the admission of this evidence. After finding the evidence relevant for some purpose other than to show defendant's propensity to commit this type of crime, *see Morgan*, 315 N.C. at 637, 340 S.E.2d at 91, the trial court applied the balancing test of Rule 403, *see Boyd*, 321 N.C. at 577, 364 S.E.2d at 119, and concluded that the evidence was more probative than prejudicial. Although most robberies committed with a firearm necessarily have much in common, the court isolated a number of pertinent factors on which to base its decision to admit the evidence. This assignment of error is overruled.

II.

[2] Next, defendant argues that the trial court erred in allowing the past recorded recollection of state's witness James Davis to be read to the jury. Davis had been defendant's cellmate at the Wayne County jail. After having a conversation with defendant about the events of 20 January 1994, Davis reported to the attorney representing co-defendant Lemons that defendant had told him that defendant, Teague, and Lemons robbed two people and that he (defendant) and Teague had each shot the woman once. Davis provided the attorney a handwritten copy of this statement. When the handwritten statement was presented to the State during Lemons' sentencing, a detective interviewed Davis and took another essentially similar statement, which Davis signed. When called by the prosecution at defendant's trial, Davis testified that he could no longer remember the substance of his conversations with defendant, but that his earlier statements to the detective and the attorney were made while he correctly remembered defendant's comments to him and were the truth as he knew it at the time.

Defendant argues that these statements were "not properly authenticated, did not meet the criteria for admission under G.S. 8C-1, Rule 803(5) and deprived [him] of his right of confrontation and due process . . . ." Rule 803(5) provides:

A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly.

N.C. Gen. Stat. § 8C-1, Rule 803(5) (1992). This rule covers precisely the situation confronted by the trial court.

After conducting a *voir dire* as to the statement Davis made to Lemons' attorney, the trial court made the following finding:

> When the witness made the statement he wrote it in his own handwriting and it was his recollection of the matters contained in the statement and the statement made by him was true at the time he made it. This statement is a record concerning a matter about which the witness once had knowledge but is now unable to recall what he knew and said. It was made by the witness when the matter was fresh in his memory and correctly reflects the knowledge he had at the time he made the statement. . . . [T]he Court orders that this statement may be read into evidence by the witness . . . .

The court made similar findings as to the statement Davis made to the detective.

Davis' powers of recollection at defendant's trial were less than impressive. He testified that the statement to Lemons' attorney was in his handwriting and contained his signature, but he could not remember writing it. However, he further testified that, although he could not remember writing the statement, what he wrote was true. Davis added that at the time he gave the statement to Lemons' attorney, he was able to recall his conversation with defendant, but that he no longer remembered what was said. He remembered testifying at Lemons' trial, but did not remember the substance of his testimony. He did not remember what he told the detective, but he did recall reviewing and correcting the statement that the detective took from him, thereby adopting it. Davis' testimony establishes that both statements are prior recollections recorded and satisfy the requirements of Rule 803(5).

Prior case law confirms the admissibility of this evidence. In *State v. Nickerson*, 320 N.C. 603, 359 S.E.2d 760 (1987), a witness stated that he could not remember the events in question. The State then presented to the witness a writing that he had previously signed. The witness testified that he remembered making a statement to an officer five weeks after the shooting, that he saw the officer write it down, that he told the truth in his statement, and that he and the officer had signed it. The witness then read the statement into evidence. The defendant argued that the witness's recorded recollection should not have been admitted into evidence "because it was not shown that

it was made while the matter was fresh in the memory of the witness [and the statement] was made approximately five weeks after the incident." *Id.* at 608, 359 S.E.2d at 762. The trial took place approximately five months after the statement was made. In response to the defendant's argument, our Supreme Court stated:

> We hold the reading of the statement was admissible under the rule. The testimony of [the witness] showed that he once had knowledge about the matter but at the time of the trial could not recall it sufficiently to testify about it at trial. He testified further that he told the truth to the deputy and saw him write it down. He then signed the statement. This satisfies the requirement of the Rule that the statement be adopted by the witness when the matter was fresh in his memory and reflected his knowledge accurately.

*Id.* at 607, 359 S.E.2d at 762.

By comparison, in *State v. Hollingsworth*, 78 N.C. App. 578, 337 S.E.2d 674 (1985), the witness whose statement was to be admitted testified that the information contained in the statement was "a lie." She further testified that she did not remember and never had remembered any of the events in question. This Court reversed the trial court's admission of her statements, holding that "[s]ince she testified that when she wrote the letter, it did not correctly reflect her knowledge of the events and she did not know facts that she had forgotten by the time of the trial, the trial court should not have admitted the letter into evidence as a recorded recollection." *Id.* at 581, 337 S.E.2d at 676-77. In the instant case, the witness gave the statements within a reasonable time of having heard them and testified that they were accurate when given. The judge followed the proper procedure in allowing the statements to be read to the jurors. There was no error in admitting this evidence.

[3] Defendant also contends that admission of these statements deprived him of his constitutional right to confront and cross-examine witnesses against him. However, evidence falling within a "firmly rooted" hearsay exception has been held sufficiently reliable that a defendant's constitutional right of confrontation is not violated by its admission. *See State v. Jackson*, 348 N.C. 644, 503 S.E.2d 101 (1998).

It is a question of first impression in North Carolina whether the recorded recollection exception codified in Rule 803(5) is firmly

rooted. The exception is of great antiquity in North Carolina, *see* Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 224 (5th ed. 1998), and has been found by other jurisdictions to be firmly rooted, *see Hatch v. State*, 58 F.3d 1447, 1467 (10th Cir. 1995) ("The exception for past recorded recollections is clearly a firmly rooted hearsay exception."); *United States v. Kelly*, 349 F.2d 720, 770 (2d Cir. 1965) (This exception has "long been favored by the federal and practically all the state courts that have had occasion to decide the question."); *Flynn v. State*, 702 N.E.2d 741, 745 (Ind. App. 1998) ("[Witness's] prior recorded statement fell with [sic] a firmly rooted hearsay exception under Evid. R. 803(5) as a prior recorded statement."); *State v. Jenkins*, 483 N.W.2d 262 (Wis. App. 1992); *see also* Fed. R. Evid. 803(5) advisory committee's note. We are persuaded that this exception is firmly rooted in North Carolina. Admission of this evidence did not violate defendant's constitutional rights. This assignment of error is overruled.

III.

**[4]** Defendant next contends that he is entitled to a new trial because the State has at different trials taken inconsistent positions regarding the testimony of two witnesses. At the sentencing phase of the earlier capital trial of co-defendant Lemons, witnesses for Lemons included James Davis and Antoine Dixon, both of whom testified that defendant had stated to them that defendant and Teague were the ones who shot the victims. Both witnesses were cross-examined and their credibility challenged by the State. However, these same witnesses were presented by the State at defendant's later murder trial. Defendant contends that because the State sought to impeach both Davis and Dixon during the trial of Lemons, it could not in good faith offer these same individuals later as credible witnesses at defendant's trial.

Defendant does not contend that the evidence presented against Lemons was inconsistent with the evidence presented against defendant. In fact, the evidence presented through these witnesses was not mutually contradictory, nor did it change between Lemons' trial and defendant's trial. There is no indication that this evidence was objectively false or that any knowing misrepresentations were made to the jury. Although defendant's statements reported by Davis and Dixon were inconsistent as to some details, the statements were consistent in defendant's admission that he shot Strickland. Therefore, the inconsistencies did not affect defendant's culpability. The case at bar is similar to *State v. Flowers*, 347 N.C. 1, 489 S.E.2d 391 (1997), where

in the trial of a co-defendant, the State argued that Flowers was only a lookout, while in Flowers' own trial, the prosecution argued that he participated in the actual stabbing. In finding no error, our Supreme Court noted that the State's evidence was essentially the same in both trials and that the State's theory was that all defendants were equally culpable. *See id.* at 19, 489 S.E.2d at 401.

We are also persuaded by the court's reasoning in *Parker v. Singletary*, 974 F.2d 1562 (11th Cir. 1992), a federal habeas corpus decision. In that case, three defendants were charged with first-degree murder, but there was uncertainty regarding which of the three actually shot the victim. At the separate trials of the defendants, the prosecution took different positions as to who committed the killing. In responding to the defendant's claim that he was denied his due process rights by the prosecution's shifting theories, the court held that it was not improper for the State to take inconsistent positions as long as doing so did not involve the use of necessarily contradictory evidence. *See id.* at 1578. In light of the uncertainty as to the identity of the triggerman, the court held it proper for the prosecutor to argue alternate theories regarding the facts of the murder. *See id.*

In the case at bar, the evidence was essentially the same in both cases, and the State, contending that both Lemons and defendant were guilty, proceeded against each co-defendant under theories of premeditation and deliberation and of felony murder. *See State v. Lemons*, 348 N.C. 335, 501 S.E.2d 309 (1998), *cert. granted, judgment vacated,* —— U.S. ——, 144 L. Ed. 2d 768 (1999). Because only the co-defendants know who actually fired the fatal shots at each victim, it was appropriate for the State to argue alternative but not mutually inconsistent theories at different trials. It was also appropriate for the State to argue credibility of the witnesses to the different juries. *See State v. Solomon*, 340 N.C. 212, 456 S.E.2d 778 (1995). We find no violation of defendant's due process rights. This assignment of error is overruled.

IV.

**[5]** Finally, defendant contends the trial court erred in instructing the jury on considering the testimony of Kwame Teague. The State called Teague as a witness after he had been convicted in a separate trial. When Teague testified that defendant was not present at the shootings, the State asked to treat him as a hostile witness, then introduced his prior statements to impeach his credibility. The trial judge

instructed the jury on the use of prior inconsistent statements and added:

> You will recall that Kwame Teague made statements before this trial to officers and I instruct you that those statements he made before the trial is [sic] not substantive evidence you may consider in determining the defendant's guilt or innocence during the trial. But you may consider those earlier statements in determining whether or not you will believe his testimony during this trial. That testimony was received for that limited purpose. There may be other witnesses [to which] the instruction I have previously given to you [applies] as to whether or not their earlier statements were consistent with or conflicted with their testimony during the trial but I specifically wanted to mention the testimony of Kwame Teague to remind you to scrutinize his testimony carefully.

Defendant made timely objection to this instruction out of the presence of the jury. After hearing defendant's objection, the trial court re-instructed the jury as follows:

> [I]t has been brought to my attention that I may have made some mistakes in my instructions to you and, in fact, in some cases did and I am going to try to correct those now. I mentioned the scrutinizing of the testimony of Kwame Teague. By that term I meant that you should be very careful in considering his testimony in that you may consider his testimony during the trial which was given under oath in determining the guilt or innocence of the defendant but the statements he made before the trial to officers or other persons are not substantive evidence that you may consider in determining the guilt or innocence of the defendant but are statements you may consider only in determining whether or not you will believe the other testimony given by Kwame Teague during the course of the trial. Those statements that he made to people outside the courtroom was [sic] offered solely for the purpose of enabling you to consider them in determining his credibility.

Defendant focuses on the original instruction given prior to his objection and argues that "it was error for the court to make this spontaneous comment, impermissibly suggesting an opinion to the jury to be careful of the witness who was most helpful to the defense, Kwame Teague." However, "[a] trial court's instructions must be read contextually as a whole, and isolated erroneous portions will not be

SANDERS v. AMERICAN SPIRIT INS. CO.

[135 N.C. App. 178 (1999)]

considered prejudicial error on appeal when the instruction read as a whole is correct." *State v. Bennett*, 65 N.C. App. 394, 397, 308 S.E.2d 879, 881 (1983) (citations omitted). It appears from the court's supplementary instructions that the trial judge recognized the possible ambiguity or error in his initial instruction about Teague and took steps to correct any misunderstanding the jury might harbor. The subsequent instruction clarified for the jury that it should not equate statements made by Teague under oath, which could be considered in determining defendant's guilt or innocence, with his earlier contradictory statements made out of court, which were not substantive evidence and could be considered only in determining Teague's credibility. This instruction was an accurate statement of the law, and any error in the initial instruction was rendered harmless by the "prompt and complete correction of the erroneous instruction." *State v. Jennings*, 333 N.C. 579, 613, 430 S.E.2d 188, 205 (1993). This assignment of error is overruled.

In closing, we note the trial court's request to the Attorney General to advise us that the Court of Appeals has "made too much erroneous and bad law because of their meddling in things that are of no concern and unimportant." We will do our best.

No error.

Judges LEWIS and JOHN concur.