STATE OF NORTH CAROLINA v. PATRICE M. PARKER and RAMALLE D. HOLLOWAY

No. COA06-870

(Filed 21 August 2007)

**1. Child Abuse and Neglect— sufficiency of evidence— defendants as perpetrators**

In a prosecution for felony child abuse, there was sufficient evidence that defendants inflicted the injuries where the uncontradicted evidence was that the injuries could not have occurred accidentally and that the injuries occurred when the child was

under the sole care and supervision of defendants. Additionally, there was evidence that defendants had each altered the accounts they gave to doctors and investigators.

**2. Criminal Law— prosecutor's argument—defendants not testifying—comment only on circumstantial evidence**

The trial court did not err by not intervening ex mero motu in a prosecution for felony child abuse where the prosecutor argued that only three people knew what happened on the morning of the injury and that the parents had not testified. Taken in context, the prosecutor was arguing that the jury was left to consider only circumstantial evidence and did not suggest that defendants must be guilty because they did not testify. Moreover, the judge instructed the jury on the privilege of not testifying.

**3. Criminal Law— equitable estoppel—not applicable**

Equitable estoppel was not extended into a criminal case in which defendants argued that the State should be barred from presenting inconsistent theories of guilt.

**4. Criminal Law— sufficiency of evidence—motion to dismiss and motion to set aside verdict**

Where there was sufficient evidence to survive motions to dismiss, there was sufficient evidence to deny motions to set aside the verdicts for insufficient evidence.

**5. Constitutional Law— unanimity of verdict—not raised by consistency of verdict and evidence**

The question of whether a guilty verdict was consistent with the evidence did not raise the constitutional question of whether the verdict was unanimous.

**6. Child Abuse and Neglect— alternate theories—not mutually inconsistent**

The State did not argue mutually inconsistent theories in a felony child abuse prosecution where defendants were tried together, the evidence showed that they had sole custody of the child when he suffered his injury, both had the opportunity to commit the crime, and the State's position throughout was that both defendants had a hand in injuring the child. Furthermore, the State did not use objectively false evidence or make misrepresentations to the jury.

**7. Criminal Law— mistrial denied—cross-examination ended and then continued**

The trial court did not abuse its discretion by denying a mistrial after the court ended a cross-examination for badgering a witness, heard arguments out of the presence of the jury on the motion for a mistrial, and denied the motion but allowed the cross-examination to continue. The propriety of counsel's examination was not an issue for the jury to determine, and it is clear that the judge made a reasoned decision.

Appeal by Defendants from judgments entered 17 November 2005 by Judge Cy A. Grant, Sr. in Beaufort County Superior Court. Heard in the Court of Appeals 15 March 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Anne M. Middleton, for the State.*

*Attorney General Roy Cooper, by Assistant Attorney General Kathleen U. Baldwin, for the State.*

*Nora Henry Hargrove for Defendant Patrice M. Parker.*

*Sofie W. Hosford for Defendant Ramalle D. Holloway.*

STEPHENS, Judge.

Ramalle Nayshawn Holloway ("Nayshawn") was born on 1 November 2002. On 25 December 2002, at approximately 11:00 a.m., Nayshawn's parents, Patrice Parker ("Defendant Parker") and Ramalle Holloway ("Defendant Holloway") (collectively "Defendants"), noticed that Nayshawn's breathing was labored and that his eyes were not bilateral or focused. Defendants eventually took Nayshawn to the Beaufort County Hospital, registering him at 2:29 p.m. Nayshawn was immediately treated by hospital staff and given oxygen, IV fluids, and antibiotics. At 4:50 p.m. Nayshawn was transferred by air to the pediatric intensive care unit at East Carolina University. The treating physicians determined that Nayshawn had severe brain damage and that his skull, ribs, collarbone, and femur were fractured. Overall, doctors believed that Nayshawn's injuries were intentionally inflicted, not accidental, and that Nayshawn suffered from "battered child syndrome." Nayshawn remains in a permanent vegetative state, is capable only of rudimentary gagging and swallowing functions, and is placed at a facility that cares for physically and developmentally challenged children.

On 10 November 2003, Defendants were indicted on charges of felony child abuse. Defendants were tried by a jury before the Honorable Cy A. Grant, Sr. during the 14 November 2005 session of Beaufort County Superior Court. The jury found both Defendants guilty as charged. Based on Defendant Holloway's prior record level of II, Judge Grant sentenced him to a prison term of 90 months minimum and 117 months maximum. Defendant Parker was sentenced to a minimum term of 44 months and a maximum term of 62 months imprisonment. Defendants appeal. For the reasons set forth below, we hold Defendants received a fair trial, free of error.

---

[1] By their first arguments,[1] Defendants contend the trial court erred in denying their motions to dismiss because the State failed to present substantial evidence that either Defendant Parker or Defendant Holloway inflicted Nayshawn's injuries. We disagree.

"On a defendant's motion for dismissal on the ground of insufficiency of the evidence, the trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." State v. Crawford, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996) (citing State v. Vause, 328 N.C. 231, 400 S.E.2d 57 (1991)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Franklin, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990) (citation omitted).

> If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.

State v. Scott, 356 N.C. 591, 596, 573 S.E.2d 866, 869 (2002) (quotation marks and citations omitted). "In considering a motion to dismiss, the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence." State v. Thaggard, 168 N.C. App. 263, 281, 608 S.E.2d 774, 786 (2005) (citation omitted). "Any contradictions or discrepancies arising from the evidence are properly left for the jury to

---

1. Although Defendants filed separate briefs, because their first three arguments allege the same errors, we will address them together.

resolve and do not warrant dismissal." *State v. King,* 343 N.C. 29, 36, 468 S.E.2d 232, 237 (1996) (citation omitted). "If there is more than a scintilla of competent evidence to support the allegations . . . it is the court's duty to submit the case to the jury." *State v. Horner,* 248 N.C. 342, 344-45, 103 S.E.2d 694, 696 (1958) (citation omitted).

Our Supreme Court has held that

[w]here an adult has exclusive custody of a child for a period of time and during such time the child suffers injuries which are neither self-inflicted nor accidental, the evidence is sufficient to create an inference that the adult inflicted an injury.

*State v. Perdue,* 320 N.C. 51, 63, 357 S.E.2d 345, 353 (1987) (citations omitted). Furthermore, upon a finding that the child suffered from "battered child syndrome," a logical presumption is raised "that someone 'caring' for the child was responsible for the injuries." *State v. Byrd,* 309 N.C. 132, 138, 305 S.E.2d 724, 729 (1983), *overruled on other grounds by State v. Childress,* 321 N.C. 226, 362 S.E.2d 263 (1987). Additionally, decisions from our Supreme Court have established "that false, contradictory or conflicting statements made by an accused concerning the commission of a crime may be considered as a circumstance tending to reflect the mental processes of 'a person possessed of a guilty conscience seeking to divert suspicion and to exculpate [himself].' " *State v. Myers,* 309 N.C. 78, 86, 305 S.E.2d 506, 511 (1983) (quoting *State v. Redfern,* 246 N.C. 293, 297-98, 98 S.E.2d 322, 326 (1957)).

Here, both Defendants were charged with felony child abuse in violation of N.C. Gen. Stat. § 14-318.4. That provision provides in relevant part that:

A parent or any other person providing care to or supervision of a child less than 16 years of age who intentionally inflicts any serious bodily injury to the child or who intentionally commits an assault upon the child which results in any serious bodily injury to the child, or which results in permanent or protracted loss or impairment of any mental or emotional function of the child, is guilty of a Class C felony. "Serious bodily injury" is defined as bodily injury that creates a substantial risk of death, or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization.

N.C. Gen. Stat. § 14-318.4(a3) (2001). Neither Defendant Parker nor Defendant Holloway contest the seriousness of Nayshawn's injuries. Rather, both assert that because Nayshawn had several caretakers and suffered injuries that could have occurred while Nayshawn was not in the care of Defendants, the State failed to establish that either Defendant Parker or Defendant Holloway perpetrated the abuse. We are not persuaded.

At trial, Dr. Russell Cooke, a board-certified pediatrician who treated Nayshawn at Beaufort County Hospital, testified that, based on the infant's "vitals, [and] given the blood loss, the onset of the traumatic event" would have been "a matter of hours, most likely, not days." Dr. Cooke testified further that the time lapse between the trauma and the manifestation of the injuries could have been "a matter of a few minutes, depending upon how severe the [blood] loss was." Dr. Ira Adler, a board-certified radiologist qualified in pediatric radiology, testified that he examined Nayshawn's medical scans and was of the opinion that the trauma which led to the swelling of Nayshawn's brain occurred within "six to 24 hours" of 8:00 p.m. on 25 December 2002. Dr. Adler testified further that "because of the findings of the blood in between the two hemispheres of the brain[,]" the injury was "very indicative of a shaking or an acceleration—deceleration injury." Additionally, Dr. Adler testified that, in his opinion, Nayshawn suffered from "battered child syndrome."

Hillary Parks ("Parks") and Russell Ball ("Ball"), friends of Defendants, described their visit with Defendants and Nayshawn on 24 December 2002. Parks stated that she spent the late afternoon and evening with Defendants, Nayshawn, and Ball, and that she and Ball left Defendants' house at approximately 11:00 p.m. Parks testified further that while she was there, Nayshawn "looked fine" and was not crying, moaning, or grunting. Likewise, Ball stated that during the evening, Nayshawn "was fine. There was nothing wrong with him at all." Statements that Defendants provided to investigators established that after Parks and Ball left their house, Defendants and Nayshawn went to sleep. Both Defendants alleged they then discovered Nayshawn's injuries the next day.

This evidence is sufficient to establish that the event which caused Nayshawn's brain injury occurred between 11:00 p.m. on 24 December 2002 and 2:29 p.m. on 25 December 2002, when he was admitted to Beaufort County Hospital. During this time, Nayshawn was under the sole care and supervision of Defendants. Furthermore,

the uncontradicted evidence established that Nayshawn's injuries could not have occurred accidentally.

Additionally, evidence was presented that Defendant Parker and Defendant Holloway each altered the accounts they provided to investigators and the doctors treating Nayshawn. For example, Defendant Holloway informed investigators that he was up for two hours while he fed Nayshawn and changed the baby's diaper during the early morning hours of Christmas Day. However, Defendant Holloway told the doctors treating Nayshawn "that this whole episode, meaning the feeding/diaper change, lasted about 45 minutes[;]" then he and Nayshawn went back to sleep. Similarly, Defendant Parker first claimed that she did not know what caused Nayshawn's injuries, but in April 2003, she informed investigators that Nayshawn was injured when, as she was carrying him, she "tripped over a toy . . . [and] Nayshawn fell out of [her] arms and hit the floor." Furthermore, each Defendant provided a different description of where Nayshawn was sleeping during Christmas morning. Defendant Holloway stated that Nayshawn was in his swing when he woke up at 11:00 a.m. Defendant Parker, on the other hand, informed investigators that she retrieved Nayshawn from his swing at 9:00 a.m. and that he slept in bed with her until 11:30 a.m. Additionally, after Nayshawn was injured, Defendant Holloway informed Ball that the baby was getting medical treatment because he had a cold. The inconsistencies between and the changes in each Defendant's account are clearly relevant and tend to show a guilty conscience and Defendants' efforts to divert suspicion from themselves. *See Myers, supra.*

While the evidence does not clearly demonstrate that either Defendant Parker or Defendant Holloway or both inflicted Nayshawn's injuries, from the substantial circumstantial evidence a reasonable inference is raised that Defendant Parker and Defendant Holloway committed the crime. This inference is strengthened by the undisputed expert testimony establishing that Nayshawn suffered from "battered child syndrome."

All of this evidence, taken in the light most favorable to the State, was sufficient to survive Defendants' motions to dismiss and to submit the case to the jury. Accordingly, Defendants' assignments of error related to the sufficiency of the evidence are overruled.

---

**[2]** Next, Defendants argue the trial court erred by failing to intervene *ex mero motu* when, during closing arguments, the prosecutor made reference to each Defendant's failure to testify. We disagree.

Under the United States and North Carolina constitutions, a defendant has the right to refuse to testify at trial. *State v. Mitchell*, 353 N.C. 309, 543 S.E.2d 830, *cert. denied*, 534 U.S. 1000, 151 L. Ed. 2d 389 (2001). Therefore, "any reference by the State regarding [a defendant's] failure to testify is violative of his constitutional right to remain silent." *State v. Baymon*, 336 N.C. 748, 758, 446 S.E.2d 1, 6 (1994) (citation omitted). "A prosecutor violates [this rule] if 'the language used [was] manifestly intended to be, or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' " *State v. Rouse*, 339 N.C. 59, 95-96, 451 S.E.2d 543, 563 (1994) (quoting *United States v. Anderson*, 481 F.2d 685, 701 (4th Cir. 1973), *aff'd*, 417 U.S. 211, 41 L. Ed. 2d 20 (1974)), *cert. denied*, 516 U.S. 832, 133 L. Ed. 2d 60 (1995), *overruled on other grounds by State v. Hurst*, 360 N.C. 181, 624 S.E.2d 309, *cert. denied*, —— U.S. ——, 166 L. Ed. 2d 131 (2006). "However, in closing argument, the prosecutor 'may properly bring to the jury's attention the failure of a defendant to produce exculpatory evidence or to contradict evidence presented by the State.' " *State v. Campbell*, 359 N.C. 644, 680, 617 S.E.2d 1, 24 (2005) (quoting *State v. Parker*, 350 N.C. 411, 431, 516 S.E.2d 106, 120 (1999), *cert. denied*, 528 U.S. 1084, 145 L. Ed. 2d 681 (2000)), *cert. denied*, 547 U.S. 1073, 164 L. Ed. 2d 523 (2006).

Defendants concede that their trial counsel did not object to the allegedly improper statements of the prosecutor. When a defendant fails to object to a closing argument, this Court must determine whether the challenged comment was "so grossly improper" that the trial court should have intervened *ex mero motu*. *State v. Walters*, 357 N.C. 68, 101, 588 S.E.2d 344, 364 (quotation marks and citation omitted), *cert. denied*, 540 U.S. 971, 157 L. Ed. 2d 320 (2003). "Only an extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken." *State v. Richardson*, 342 N.C. 772, 786, 467 S.E.2d 685, 693 (citation omitted), *cert. denied*, 519 U.S. 890, 136 L. Ed. 2d 160 (1996). On appeal,

the reviewing court must determine whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offend-

ing attorney; and/or (2) instructed the jury to disregard the improper comments already made.

*State v. Jones,* 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002).

In the case *sub judice,* the prosecutor made the following statements that Defendants assert constitute reversible error:

Ladies and gentlemen, the only thing I'm going to say about this is *Mr. Holloway did not testify,* and because he did not testify you can't guess or speculate about what he would have said.

His plea of not guilty . . . is basically him saying the State has to prove its case, and that's what we're going to do in this case, and that's what we have done is this case.

Now, let's talk about possibilities. Remember three people, three people know what happened to Nayshawn on Christmas morning 2002. One is Patrice Parker, one is Ramalle Holloway, and one is Nayshawn.

*And you haven't heard testimony from the defendants,* and really you haven't heard testimony[2] from Nayshawn in a way, but I think you have. I think he tells you who did this. He doesn't tell you it in his own voice. He has the voice of the doctors.

In a sense he has the voice of his parents, because they kind of tell you who did this. They don't tell you who did it, but they only leave you to one conclusion that they did it, and that's his testimony in this case and that's why we're here. That's what justice is about.

(Emphasis added). While the prosecutor's closing argument pushes the boundaries of what is proper, we hold it was not such an extreme impropriety that the trial court should have been compelled to act. Taken in the context in which it was made, the prosecutor's statement does not allege or even suggest that Defendants must be guilty because they did not testify. Rather, the statement explains that because of the absence of direct evidence and Defendants' failure to provide exculpatory evidence, the jury is left to consider only circumstantial evidence to reach their decision. Furthermore, in his instructions to the jury, Judge Grant directed that although "neither

---

2. Each Defendant's assignment of error limits review of the prosecutor's closing argument at this point. To understand the context in which the statement was made and to promote thorough appellate review, we have included additional portions of the argument in this opinion.

defendant in this case has testified[,] . . . [t]he law give a defendant this privilege. This same law also assures a defendant that this decision not to testify creates no presumption against the defendant. Therefore the silence of the defendant is not to influence your decision in any way." In this case, based on the circumstantial evidence upon which the State was forced to rely, the trial court did not err in failing to intervene. Accordingly, this argument is overruled.

[3] Defendants next contend that the trial court erred in failing to set aside the jury's verdicts. Defendants argue that the State was barred by equitable estoppel from arguing inconsistent theories of guilt to the jury, that the evidence did not support each Defendant's conviction, and that the State violated each Defendant's constitutional rights by presenting inconsistent theories of guilt to the jury. We cannot agree.

"Equitable estoppel prevents one party from taking inconsistent positions in the same or different judicial proceedings, and 'is an equitable doctrine designed to protect the integrity of the courts and the judicial process.' " *State v. Taylor*, 128 N.C. App. 394, 400, 496 S.E.2d 811, 815 (quoting *Medicare Rentals, Inc. v. Advanced Servs.*, 119 N.C. App. 767, 769, 460 S.E.2d 361, 363, *disc. review denied*, 342 N.C. 415, 467 S.E.2d 700 (1995)), *aff'd per curiam*, 349 N.C. 219, 504 S.E.2d 785 (1998). While this doctrine has a long and storied history in civil cases, this Court has recognized that " 'as far as we can tell, th[e] obscure doctrine [of judicial estoppel] has never been applied against the government in a criminal proceeding[.]' " *Taylor*, 128 N.C. App. at 400, 496 S.E.2d at 815 (quoting *United States v. Kattar*, 840 F.2d 118, 129-30 n. 7 (1st Cir. 1988)). Defendants provide no authority to support the application of this doctrine to the criminal context and our research reveals none. We thus decline to extend the reach of this principle into the criminal arena. Accordingly, Defendants' arguments based on equitable estoppel are overruled.

[4] Defendants further contend the trial court erred in failing to set aside the verdicts against them because there was insufficient evidence to support the convictions. As with their motions to dismiss, Defendants assert that because there was no direct evidence that either Defendant Parker or Defendant Holloway inflicted Nayshawn's injuries, the motions to set aside the verdicts should have been granted. Again, we disagree.

"The standard of review of a trial court's denial of a motion to set aside a verdict for lack of substantial evidence is the same as review-

ing its denial of a motion to dismiss . . . ." *State v. Duncan*, 136 N.C. App. 515, 520, 524 S.E.2d 808, 811 (2000) (citation omitted). Since we have held that the State presented sufficient evidence to survive each Defendant's motion to dismiss, it follows that Defendants' motions to set aside the verdicts based on the alleged lack of substantial evidence should also be denied. Accordingly, this argument is overruled.

**[5]** Finally, both Defendants contend the trial court's denial of their motions to set aside the verdicts violated their constitutional rights. Relying on the North Carolina Constitution, Defendant Holloway argues that the trial court's denial of his motion violated his right that any criminal conviction "shall be . . . by the unanimous verdict of a jury in open court." This constitutional argument is not properly before us. In making his motion to set aside the verdict to the trial court, Defendant Holloway's attorney argued that "the guilty verdict [was] . . . inconsistent with the evidence." This argument raised only the sufficiency of the State's evidence to support Defendant Holloway's conviction. It did not present for the trial court's consideration any alleged constitutional violation in Defendant Holloway's case. Because this constitutional argument was not raised before the trial court, we will not consider it on appeal. *See State v. Lloyd*, 354 N.C. 76, 86-87, 552 S.E.2d 596, 607 (2001) (holding that "[c]onstitutional issues not raised and passed upon at trial will not be considered for the first time on appeal") (citation omitted).

**[6]** Defendant Parker asserts that the trial court's denial of her motion to set aside the verdict violated her due process rights because the State impermissibly proceeded under two alternative theories of guilt by which it sought to convict both Defendant Parker and Defendant Holloway. We disagree.[3]

In *State v. Leggett*, 135 N.C. App. 168, 519 S.E.2d 328 (1999), *appeal dismissed and disc. review denied*, 351 N.C. 365, 542 S.E.2d 650 (2000), this Court held that it was not improper for the State to argue different theories at two different trials when the evidence presented was not inconsistent. In so holding, the Court relied on the fact

3. In its brief, the State contends that Defendant Parker did not preserve her due process argument because she did not specifically argue a due process violation to the trial court. However, a review of the transcript reveals that Judge Grant was aware of a potential due process objection based on the State's arguing inconsistent theories of guilt to the jury. Therefore, although Defendant Parker's motion to the trial judge to set aside the verdict did not specifically utilize the term "due process," we conclude that her argument that the motion should be granted because there were "alternative and totally inconsistent theories presented as to the guilt" was sufficient to preserve her due process issue on appeal.

. that there was "no indication that [the] evidence was objectively false or that any knowing misrepresentations were made to the jury." *Id.* at 175, 519 S.E.2d at 333. Additionally, the *Leggett* Court determined that "[b]ecause only the co-defendants know who actually fired the fatal shots at each victim, it was appropriate for the State to argue alternative but not mutually inconsistent theories at different trials." *Id.* at 176, 519 S.E.2d at 334.

Here, although both Defendants were tried together, it was not a violation of Defendant Parker's due process rights for the prosecution to argue alternative but not mutually inconsistent theories. The evidence before the trial court tended to show that both Defendants had sole custody of Nayshawn at the time he suffered his brain injury and femur and skull fractures, and that both had the opportunity to commit the crime. Additionally, the State did not argue mutually inconsistent theories. In his closing argument, the prosecutor stated "if you decide [Defendant Holloway] did it, and he did it alone, find her not guilty. If you decide [Defendant Parker] did it, and she did it alone, find him not guilty. But you have evidence to conclude beyond a reasonable doubt that they're both guilty." From this argument, it is clear that the State's position throughout the case was that both Defendants had a hand in injuring Nayshawn. Furthermore, as in *Leggett*, the prosecutor did not use objectively false evidence against Defendants or make misrepresentations to the jury. On the contrary, like the defendants in *Leggett*, because Defendant Parker and Defendant Holloway are the only ones who know what happened to Nayshawn, it was not improper for the State to argue alternative but not mutually inconsistent theories of Defendants' guilt to the jury. This assignment of error is overruled.

[7] Defendant Holloway additionally assigns as error the trial court's failure to grant a mistrial for making allegedly improper statements in the presence of the jury. We disagree.

Under North Carolina law, a trial judge "must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (2005). Our Supreme Court has recognized that a "[m]istrial is a drastic remedy, warranted only for such serious improprieties as would make it impossible to attain a fair and impartial verdict." *State v. Stocks*, 319 N.C. 437, 441, 355 S.E.2d 492, 494 (1987) (citation omitted). On appeal, this Court

reviews a trial court's failure to grant a mistrial for an abuse of discretion. *State v. Hagans,* 177 N.C. App. 17, 628 S.E.2d 776 (2006). A trial court abuses its discretion if the trial court's decision was so arbitrary that it could not have been the result of a reasoned decision. *State v. Wilson,* 313 N.C. 516, 330 S.E.2d 450 (1985).

At trial, Defendant Holloway moved for a mistrial when, during his trial counsel's cross-examination of Dr. Michael E. Reichel, one of the pediatricians who treated Nayshawn, the trial court interjected and the following exchange occurred:

> THE COURT: Wait a minute, I'm not going to let you sit here and badger argue with the witness—
>
> MR. KING: —but Judge, he's not responsive to my question.
>
> THE COURT: Keep arguing with me [and] you're not going to ask any more questions.
>
> MR. KING: Judge I ask—
>
> THE COURT: —step down. End cross-examination.

After this exchange, out of the presence of the jury, Defendant's attorney moved for a mistrial. After hearing arguments from counsel, Judge Grant denied the motion, but allowed Mr. King to continue his cross-examination.

Defendant Holloway argues that Judge Grant's action in stopping cross-examination and his statement that Defendant Holloway's attorney was "badger[ing]" the witness constituted an impermissible expression of an opinion in violation of the Criminal Procedure Act. *See* N.C. Gen. Stat. § 15A-1222 (2005) (stating that a "judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury"). However, the courts of our State have "long held that the scope and manner of examination of witnesses are matters which are ordinarily governed by the trial judge who may take appropriate measures to restrict improper questioning by counsel." *State v. Searles,* 304 N.C. 149, 157, 282 S.E.2d 430, 435 (1981) (citation omitted). In *State v. Alverson,* 91 N.C. App. 577, 579, 372 S.E.2d 729, 730 (1988), this Court held that a trial court did not violate N.C. Gen. Stat. § 15A-1222 when the judge stated that the defendant's attorney was " 'badgering the witness' and 'arguing' on cross-examination" because "[a]ll of the comments were routinely made in the course of the right and duty the trial judge had to control examination and cross-examination of witnesses[.]"

Here, Judge Grant's actions and comments were directed solely at counsel's conduct during cross-examination and therefore were proper under *Alverson*. Furthermore, the plain language of section 15A-1222 prohibits the trial court from expressing an opinion on a "fact to be decided by the jury." N.C. Gen. Stat. § 15A-1222. Because the propriety of counsel's cross-examination was not an issue of fact for the jury to determine, Judge Grant's actions or comments in no way violated section 15A-1222 of the Criminal Procedure Act. Moreover, because the trial court discussed the matter and heard argument from Defendant's counsel outside the presence of the jury before making his decision to deny the motion for a mistrial, it is clear that Judge Grant made a reasoned decision and did not abuse his discretion. Accordingly, this assignment of error is overruled.

For the reasons stated, we hold Defendants received a fair trial, free of error.

NO ERROR.

Judges McGEE and ELMORE concur.